| ATTORNEY WORKPRODUCT |

| RONALD R. TAYLOR |
| PRIVATE INVESTIGATOR |

| REPORT OF INVESTIGATION |

| **Attorney:** | Holly Pierson |
| | David Brown |

| **Report:** | Memorandum of Activities |

| **Report #:** | 1 |

| **In re:** | Joe Wiseman |

Investigator Taylor was requested to conduct an investigation to determine if the lump sum contracts negotiated by Joe Wiseman with Buncombe County were "padded" to include illegal payments for trips and other personal expenses for Buncombe County employees.

The following is an outline of all investigative activities regarding this investigation:

## Details of Investigation

Defense counsel briefed Investigator Taylor as to the details of the investigation of Wiseman.

Subsequent to these conversations, Investigator Taylor received numerous files in the possession of defense counsel relating to the payment of the illegal payments. These documents included various documents relating to meetings and discussions with the AUSA regarding the Wiseman investigation, and certain contracts and spreadsheets relating to trips paid for by Wiseman during the relevant period (2014 – 2017).

Investigator Taylor conducted a thorough examination of the documents provided by defense counsel. After this document review, Investigator Taylor believed that a detailed analysis of the contracts themselves would be the best approach to determine if the contracts were padded. In an effort to validate Investigator Taylor's investigative approach, Investigator Taylor contacted Tony Ollmann, CPA. Ollmann is the firm director of Baker Tilly Virchow Krause, LLP a construction risk management CPA practice headquartered in Wisconsin. Ollmann's expertise includes large complex construction audits, process improvement consulting, and construction fraud prevention and detection. Ollmann also provides litigation support services and is a frequent speaker at numerous construction, trade and audit associations. Ollmann agreed with Investigator Taylor's approach to the issues in the Wiseman matter, primarily that the scope of work to be performed in the multi-year contracts should be compared with the other multi-year contracts.

Investigator Taylor then conducted several detailed interviews of Wiseman regarding this issue and requested that Wiseman provide Investigator Taylor with all contracts negotiated by Wiseman with Buncombe County during the period 2014-2018. Investigator Taylor received a total of 59 contracts. Investigator Taylor determined that 26 of these contracts were multi-year (recurring) contracts and the remaining 33 contracts were yearly (non-recurring) contracts.

During Investigator Taylor's investigation, defense counsel requested, via a FOIA request, all documents relating to contracts negotiated with engineering firms before 2014 and all subsequent contracts negotiated with other engineering firms after 2017. This request was made in an attempt to obtain contracts that were negotiated before and after the period in question to determine the price of any like scope work in these contracts.

Investigator Taylor subsequently received approximately 350 PDF documents relating to the FOIA request from Buncombe County. These documents were reviewed and only a small number of these documents could be identified for comparison purposes.

Investigator Taylor first attempted to examine each of the multi-year contracts and identify the scope of work performed on each contract and compare the costs related to the scope of work from year to year on these contracts.

Subsequent to an analysis of these contracts, Investigator Taylor contacted Wiseman and asked for an explanation as to any differences in the price of the contracts, if it fluctuated from year to year. Wiseman provided Investigator Taylor detailed explanations as to why the contracts increased or decreased. As a result, Investigator Taylor requested that Wiseman provide Investigator Taylor any documentation that would support Wiseman's explanation for the increase/decrease in the price of the contracts.

Investigator Taylor completed an analysis of the multi-year contracts (26 contracts) which included Wiseman's explanation for any increase/decrease in the contracts, and any supporting documentation of his explanations, and found no evidence of padding in the multi-year contracts. However, Investigator Taylor had no contracts to compare to the yearly (non-recurring) contracts (33 contracts).

During this investigation Investigator Taylor discovered that Wiseman learned how to price lump sum contracts while working at CDM Smith. Wiseman continued to price the lump sum contracts he negotiated with Buncombe County using the same methodology he learned while working at CDM Smith. The pricing of a lump sum contract includes Wiseman's direct labor charge (which includes a multiplier to cover the cost of overhead and profit). To arrive at the direct labor charge, Wiseman would estimate the number of hours it would take to complete the project and multiply this by his hourly rate. While working for CDM Smith, Wiseman's hourly rate was approximately $200 an hour. Wiseman's hourly rate after he left CDM Smith was only $175 per hour. Added to this amount would be any direct costs related to the project, such as subcontractor fees and other necessary expenses incurred to fulfill the terms of the contract. Subcontractor fees made up the bulk of any additional costs added to Wiseman's estimated direct labor charge.

Knowing how Wiseman calculated the contract price of his contracts, Investigator Taylor decided to also conduct a forensics investigation of the contracts, and Wiseman's books and records and tax returns to determine if the contracts were padded. Investigator Taylor determined that a forensics investigation was necessary because Investigator Taylor could not determine the value of the single year (non-recurring) contracts, and to further corroborate his initial findings.

The results of this forensics investigation are reflected in the following chart:

## 2014 - 2017

| Item | Totals | Rate |
|---|---|---|
| **Total Contract Price (Actual)** | | |
| Multi-Year Contracts (Actual) | $824,840 | |
| Yearly Contracts (Actual) | $1,315,550 | |
| Total Contract Price (Actual) | $2,140,390 | |
| Subcontractors (Actual) | -$729,669 | |
| Total Funds Available | $1,410,721 | $176 |
| **Total Contract Price (Forensic)** | | |
| Gross Receipts ($175 Hour - Yearly Rate) | $1,400,000 | $175 |
| Subcontractors (Actual) | $729,669 | |
| Total Contract Price (Forensic) | $2,129,669 | |
| **Comparison of Contracts (Actual v Forensic)** | | |
| Total Contract Price (Actual) | $2,140,390 | |
| Total Contract Price (Forensic) | $2,129,669 | |
| **Net Income (Tax Returns)** | | |
| Salary | $261,000 | |
| Pensions | $178,000 | |
| Net Profit (Includes Buncombe County Employees) | $362,262 | |
| Net Income (Tax Returns) | $801,262 | $100 |

In addition to the above described investigative techniques, Investigator Taylor analyzed the Government's Information filed against Wiseman in an attempt to further corroborate Investigator Taylor's findings. The Information filed against Wiseman alleged that from 2001 through 2017, Buncombe County entered into contracts with CDM Smith totaling approximately $13.3 million. The information further alleged that from May 2014 through February 2018, Buncombe County paid EIC (Wiseman) approximately $1.9 million pursuant to contracts negotiated with Wiseman.

An analysis of the Information reflected that the EIC contracts resulted in the following net savings to Buncombe County:

| Item | Yearly |
|---|---|
| CDM Smith Contracts - $13.3 Million (17 Years) | $782,353 |
| EIC Contracts - $1.9 Million (4 Years) | -$475,000 |
| Yearly Net Savings to Buncombe County | $307,353 |

## Results of Investigation

Investigator Taylor conducted a thorough investigation of all available documents relating to the payment of trips and other personal expenses by Joe Wiseman for Buncombe County employees. Investigator Taylor also conducted a thorough investigation of the lump sum contracts negotiated by Wiseman with Buncombe County officials.

Based on this investigation, Investigator Taylor determined the following:

1) Wiseman's hourly labor rate was $175 per hour.
2) The hourly rate for engineering firms CDM Smith and SCS exceeded $175 per hour.
3) Wiseman included his hourly labor rate plus direct costs related to the project in his negotiated contract price.
4) The total price of the contracts during the period 2014 - 2017 was $2,140,390.
5) The total amount Wiseman paid subcontractors during this period was $729,669.
6) The funds available to Wiseman during this period to pay all of his overhead expenses and realize a profit was $1,410,721.
7) The hourly rate of the funds available to Wiseman to pay his overhead expenses and realize a profit was $176 per hour.
8) In addition to his overhead expenses, Wiseman also paid for all trips and other personal expenses for Buncombe County employees from his available funds.
9) Wiseman's tax returns revealed that during the period 2014 - 2017 Wiseman's business realized a total net income of $801,264, after paying all overhead expenses and the trips and other personal expenses paid for Buncombe County employees.

10) The hourly rate of Wiseman's total net income was $100 per hour. The remaining $75 per hour was used by Wiseman to pay all of his overhead expenses and for the trips and other personal expenses paid for Buncombe County employees. This substantially reduced the potential profit Wiseman could have made, had he not paid for the trips and other personal expenses for Buncombe County employees.
11) Wiseman's total net income of $801,264 during the period 2014 - 2017 resulted in an average annual income of $200,315 per year.
12) Wiseman's salary from CDM Smith during 2011 was $200,201; therefore, Wiseman's average annual income of $200,315 per year is consistent with what he was making while employed at CDM Smith.
13) An analysis of the government's Information filed against Wiseman further corroborates Investigator Taylor's findings. It is believed these savings were the result of Wiseman's lower labor rate, compared to CDM Smith's rate and CDM Smith's use of multiple employees on a contract.

## Conclusions

Based on my experience, my expertise, my thorough review of the relevant evidence and my discussions with Mr. Wiseman, I have concluded, to a reasonable certainty that Mr. Wiseman did not, and could not, have padded or inflated his contracts with Buncombe County.

Investigation completed.


*Ronald R. Taylor*     *8/20/2019*

**Ronald R. Taylor**
**Private Investigator**
**NCPPS #3863**
**SCPDC #2753**
**1235 East Boulevard**
**Suite E-183**
**Charlotte, NC 28203**
**704-779-3919 Cell/Text**
**rontaylorpi@gmail.com**