IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 1:19-cr-17-RJC |
|   Plaintiff, | ) | |
| | ) | |
|          v. | ) | |
| | ) | |
| JOSEPH F. WISEMAN, JR., | ) | |
|   Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION
TO GOVERNMENT'S CLAIM FOR RESTITUTION**

Now Comes Defendant, Joseph F. Wiseman, Jr., ("Mr. Wiseman") by and through his undersigned counsel, and respectfully submits the following response in opposition to the Government's claim that Mr. Wiseman owes restitution to Buncombe County ("the County") "in an estimated amount "between $385,815.11 and $964,537.77."  Doc. 41-1, p. 7.  For the reasons set forth below, the County's restitution claim is without merit and should be denied.[1]

**STATEMENT OF FACTS**

On September 19, 2018, the County filed a civil lawsuit against Mr. Wiseman and his co-defendants, Wanda Greene, Jon Creighton, and Amanda Stone.  *Buncombe County v. Joseph F. Wiseman, Jr., et. al.*, 18 CV 04206.  In that filing, the County alleged, among other things, that Mr. Wiseman and his co-defendants conspired to award contracts to Mr. Wiseman's company, Environmental Infrastructure Consulting ("EIC") in return for kickbacks and bribes.  *Id.*, ¶ 28.

The County also alleged that Mr. Wiseman and his co-defendants conspired to cause the County to reimburse EIC and Mr. Wiseman for the costs of such kickbacks and bribes.  *Id.*

---

[1] Mr. Wiseman apologizes to the Court in advance for the length of this submission.  Unfortunately, because the County and the Government sprang this completely new theory on Mr. Wiseman and the Court for the first time in its most recent restitution submission, and because there are so many and varied factual and legal reasons that this new theory cannot be properly applied in this case, a lengthy and detailed response is necessary and unavoidable.

Therefore, according to the County, it was entitled to an award for damages in an amount between $25,000 and $1.9 million. *Id*. at ¶¶ 65, 87, 108.

Mr. Wiseman entered a guilty plea to a one-count Bill of Information alleging a conspiracy to commit honest services fraud with Greene, Creighton, and Stone in violation of 18 U.S.C. § 371 on February 7, 2019. Doc. 20, ¶ 2. In the Factual Basis filed with Mr. Wiseman's plea agreement, the parties stipulated that all of the contracts between EIC and the County were "lump sum contracts, with the County agreeing to pay a particular sum to EIC *regardless of any additional expenses that EIC might incur in performing the contract*." Doc. 3, ¶ 10 (emphasis added).

The Factual Basis further provided as follows:

> The defendant contends that the expenses he incurred by providing these trips, gifts, and other things of value came out of what otherwise would have been part of the profit he would have made as part of the lump-sum contracts, rather than from any type of "padding" or inflating the contract amount in order to pay for these expenses. *The Government's investigation has thus far neither confirmed nor rebutted this contention as to whether the contracts themselves were inflated in such a way as to charge the County more in order to fund these illegal expenses*.

*Id*. at ¶14 (emphasis added). Finally, the parties stipulated that the "value of the gifts and things of value that [Mr. Wiseman] provided to those County employees exceeded $40,000" (Doc. 3, ¶ 16) but did not exceed $95,000. Doc. 2, ¶ 8.c.

On April 8, 2019, the United States Probation Officer mailed a packet of forms to the County "requesting a summary of victim losses and victim impact comments." Doc. 20, ¶ 24. And, on April 14, 2019, the Probation Officer submitted her draft Presentence Investigation Report (PSR) to the parties. *Id*. at p. 1. That report did not include any claim by the County for restitution from Mr. Wiseman. *Id*., ¶ 24.

As required by Rule 32, Fed. R. Crim. Pro., Mr. Wiseman submitted his objections to the draft PSR on April 29, 2019. Doc. 18. But despite having filed the civil suit against Mr. Wiseman

more than seven months earlier, the County waited until after the deadline for Mr. Wiseman to file his objections to the PSR before submitting any claim for restitution with the Probation Officer. *Id*. at p. 2 n. 1.

Finally, on May 17, 2019, nearly three weeks after Mr. Wiseman was required to file his objections to the draft PSR and almost eight months after the County alleged that Mr. Wiseman was responsible for restitution in the amount of between $25,000 and $1.9 million, the County finally responded to the Probation Officer's request for victim-impact information. The County now asserted, under penalty of perjury, that it was due restitution in the amount of $500,000 based on its *belief* that Mr. Wiseman inflated his contracts to pay for the costs of the trips taken by the corrupt government officials with whom he is charged with conspiring:

> [I]t is believed that those trips, etc. costs (*sic*) in excess of $500,000.00 which was billed to Buncombe County under the guise of 'work.' Buncombe County is currently in the process of having someone who works in the same field review the contracts with Mr. Wiseman's company to determine how much Buncombe County was overcharged in addition to the trips, etc.

*Id*. As noted by the Probation Officer, however, "[n]o supporting documentation was submitted with the victim's request for restitution." *Id.* Nor did the County ever supplement its submission to the Probation Officer.

By the time of its submission to the Probation Officer, the County had already settled its civil lawsuit with Greene, Creighton, and Stone for approximately $100,000 total. Based on information presented to counsel for Mr. Wiseman, the County determined that the losses associated solely with Creighton's and Stone's participation in the conspiracy with Mr. Wiseman amounted to less than $60,000.

Specifically, the County provided the following information concerning the value of the trips taken by Creighton and Stone:

I calculated that Mandy Stone owed Buncombe County approximately $147,296.00 which would leave approximately $23,955.00 that could be allocated to the trips that she took.

I did the same calculation for Jon Creighton and determined that he owed Buncombe County approximately $153,001.00 exclusive of the costs of any trips. This means that approximately $35,999.00 could be allocated to the trips that he took.

*See* Email from Ron Payne, Counsel for the County, dated May 14, 2019 (attached hereto as Exhibit A).[2] Although the value of the trips taken by Greene was not specified in this email, Mr. Payne's representations to the County Commissioners regarding that settlement and the breakdown of how that settlement was reached indicates that Greene also paid approximately $36,000 based on her role in the honest services fraud with Mr. Wiseman, Creighton, and Stone.[3]

Thus, the County determined that the total value of the trips paid for by Mr. Wiseman for the three corrupt government officials was less than $100,000. And, the County had fully recovered the amount of the losses sustained by those employees' engagement in honest services fraud with Mr. Wiseman by the date of sentencing on August 28, 2019. As a result, no further restitution was requested or ordered by the Court for any of those

---

[2] The balance of the amount calculated by the County as due from Creighton and Stone is based on the fact that they obtained reimbursement from the County for personal trips already paid for by Mr. Wiseman and for claiming reimbursement for unused annual leave while on these personal, non-business-related trips. *See* Case No. 1:18-cr-88, Doc. 19, ¶¶ 12-13, Doc. 28, ¶¶ 9-10. Because Mr. Wiseman was not a County employee, he did not submit any such false expenses or obtain any such reimbursement. Nor was he aware that the County's employees had engaged in this additional fraudulent conduct.

[3] Like Creighton and Stone, Greene also paid restitution to the County based on her reimbursement for personal trips already paid for by Mr. Wiseman and for obtaining reimbursement for unused annual leave during those personal trips. Case No. 1:18-cr-88, Doc. 34, ¶¶ 29-30. Greene, however, was involved in numerous schemes unrelated to Mr. Wiseman, and so she was also required to reimburse the County for her misuse of the County's credit card resulting in a loss of nearly $140,000.00 (*id*. at ¶¶ 4-9) and her misappropriation of approximately $1.5 million of the County's funds to pay for unauthorized whole life insurance policies. *Id*. at ¶¶ 10-19.

defendants with regard to the honest services fraud conspiracy.[4]  Case No. 1:18-cr-88, Doc. 93, p. 4, 95, p.4, 105, p.4.

Mr. Wiseman responded to the County's submission, and, in less than two weeks, filed objections to the County's restitution claim on May 28, 2019. Doc. 19.  In his response to the County's submission, Mr. Wiseman pointed out that the County had failed to submit any evidence to support its claim for restitution of any amount, let alone its speculative guess that it might be entitled to somewhere in the vicinity of $500,000 from Mr. Wiseman.  *Id*. at p. 2.

Additionally, Mr. Wiseman noted that the County's claim that it was entitled to restitution based on the value of the trips paid for by Mr. Wiseman was contrary to law because the County had not and could not demonstrate that the value of the trips were actual damages to the County.  *Id*. at p. 4.  Finally, Mr. Wiseman noted that the County had already recovered the full amount of restitution from Greene, Creighton, and Stone based on the value of the trips for which Mr. Wiseman paid and, thus, the County was not entitled to a windfall by seeking additional restitution beyond what it *claimed* were its actual damages from Mr. Wiseman.  *Id*. at pp. 5-6.

The Government filed no objections to the draft PSR.  Doc. 20, p.21.  More importantly, the Government declined to support the County's restitution claim or provide the missing evidentiary support for the County's unsupported assertion that it was entitled to restitution based on the allegation that Mr. Wiseman had inflated his contracts.  Nor did the Government challenge Mr. Wiseman's objections to the County's claim for restitution.

---

[4] Greene's restitution was left open until a determination could be made as to how much she owed the Internal Revenue Service.  Case No. 1:18-cr-88, Doc. 104.  Greene later withdrew her objection to the imposition of restitution to the IRS and agreed to pay the sum of $207, 660.  *Id*.  The Court amended the judgment accordingly but, again, Greene was not required to pay any additional restitution to the County other than the amount which the County had previously agreed to accept.  Doc. 105.

Mr. Wiseman's sentencing hearing was held on August 28, 2019. Doc. 38, p. 1. Despite having provided no evidence to support the County's claim, and despite the failure to notify the Court within ten days of the hearing that it would seek a delay of the restitution issue, as required by 18 U.S.C. § 3664(d)(5), the Government moved the Court to postpone a final decision on the issue of restitution for ninety days so the County's losses could be fully ascertained pursuant to 18 U.S.C. § 3664(d)(5). Doc. 41, p. 1. The Government did not suggest that the additional time was needed because the County, more than a year after filing a civil lawsuit against Mr. Wiseman and more than four months after stating, under oath, that its losses were more than $500,000, was actually seeking additional time to allow the County to create a new theory of restitution with completely new loss amounts untethered to any actual facts or reasonably precise calculations.

Mr. Wiseman objected to the Government's motion, pointing out that the County had already had nearly a year to provide evidence supporting its claim that the EIC contracts were inflated and that the Government had, as of the date of sentencing, declined to support the County's claim or offer evidence of its own to justify the imposition of restitution in any amount. And, Mr. Wiseman noted that the County had already declared, under oath, the amount of its losses in its submission to the Probation Officer on May 17, 2019.

Mr. Wiseman also noted that unlike the County, Mr. Wiseman had already submitted an expert report from former Special Agent Ron Taylor who, after conducting an extensive forensic examination of EIC's contracts with the County, opined that, based on his experience, expertise, and a thorough review of the relevant evidence, Mr. Wiseman "did not, and could not, have padded or inflated his contracts with Buncombe County." Doc. 28-1, p. 5. The Court overruled Mr. Wiseman's objection and granted the Government an additional ninety days to allow the County to provide evidence supporting its restitution claim (Doc. 39, p. 4.), despite the fact that the County

claimed that "it was in the process of having someone who works in the field review the contracts with Mr. Wiseman's company to determine how much Buncombe County was overcharged in addition to the aforementioned trips, etc" starting on or before May 17, 2019. Doc. 20, ¶ 24. Mr. Wiseman's experts did not need six and a half months to prove that Mr. Wiseman's contracts were not inflated.

Each of Mr. Wiseman's co-defendants were also sentenced on August 28, 2019. Because the Government and the County represented that the County had already recovered the full amount of the losses from those defendants, including any losses associated with the lost value of the honest services those corrupt employees were paid to provide, no additional restitution was requested by the Government or the County and none was ordered by the Court. Case No. 1:18-cr-88, Doc. 93, p. 4, 95, p.4, 105, p.4.[5]

Pursuant to the Court's order, the Government filed a pleading on September 26, 2019, adopting the County's contention that it was due restitution in *an amount between $385,815.11 and $964,537.77*. Doc. 41 (emphasis added). In this pleading, the County presents its newly concocted theory of restitution based on its claimed loss of the honest and faithful services of Greene, Creighton, and Stone on September 26, 2019. *Id.* The Government provided no independent analysis and neither the Government nor the County submitted any evidence to support this theory of restitution or the novel methodology used to arrive at now completely

---

[5] As this Court knows, the MVRA requires the Government to request restitution in the full amount of the victim's actual loss, regardless of any civil settlement. If the Government believes that additional restitution is due from Mr. Wiseman (and, therefore, necessarily each of the other co-defendants) based upon the County's current restitution theory, it was legally obligated to request it for each jointly and severally liable defendant. The Government's position in adopting the County's current theory of restitution when it previously failed to request any such restitution is inconsistent and troubling. Whether inadvertently or not, the Government's adoption of the County's latest submission gives the impression that restitution in the criminal case can be used to punish Mr. Wiseman for being the only defendant who has refused to settle the County's civil case because of its factually baseless and exorbitant demands (i.e., the County has attempted to extract a settlement from Mr. Wiseman that is more than 6 times the amount for which it settled its civil case with its own corrupt employees). Of course, this would be wholly improper.

different amounts than had been previously claimed either in the County's civil suit or in the County's submission to the Probation Officer under oath. *Id*., Doc. 41-1.

On September 27, 2019, Mr. Wiseman filed two additional expert reports from Sterner Consulting, a well-respected, independent engineering and consulting firm retained to evaluate the reasonableness of prices charged to the County for EIC's services. Doc. 42. Having reviewed more than fifty contracts between EIC/Petra and the County, Sterner offered the following expert opinions:

> In our opinion, and based upon our expertise and experience, we believe that all of the Wiseman/EIC/Petra contracts with Buncombe County that we reviewed are reasonable, and *in no case did we believe that there were any inflated or excessive terms or charges* above what we typically encounter in our review of landfill and engineering projects across the United States.

Doc. 42-1, p. 2, Doc. 43, p. 3 (emphasis added).

After more than a year of preparing to refute the County's claim that it was entitled to restitution based on its unsupported and unsupportable assertion that the contracts between EIC and the County were inflated, Mr. Wiseman is now confronted with the County's new theory of restitution and a factually and legally unsustainable  methodology (or, more appropriately, lack thereof) for calculating the County's currently alleged loss. Doc. 41-1. Having abandoned[6] its original theory that the contracts between EIC and the County were inflated (ostensibly because the facts and expert reports filed by Mr. Wiseman made clear it must), the County now claims that it is entitled to restitution from Mr. Wiseman in an amount that [doubles, quadruples, etc.) the

---

[6] It is not entirely clear that the County has completely abandoned its original theory of restitution or has simply added the new theory as a contingency in the event that the Court finds, as it should, that the Government has failed to provide any evidentiary basis for awarding restitution on the basis that EIC's contracts with the County were inflated. "Wiseman's own filings establish that he charged Buncombe County contract rates sufficient to not only pay for the trips, gifts, and favors for his co-conspirators but to also pay him the full annual income he was accustomed to." Doc. 41-1, p.2. Accordingly, Mr. Wiseman addresses both of the County's baseless restitution theories below.

restitution ordered for any other co-conspirator[7] based on the County's guess as to the alleged lost value of the honest services of Mr. Wiseman's coconspirators, Greene, Creighton, and Stone.  *Id.*[8] This restitution request is factually and legally meritless.

As with the County's previous theory of restitution, the County has simply provided a self-serving and less-than-complete statement of the facts, citation to cases that are either inapposite, are easily distinguishable and/or are taken completely out of context, and legal argument based on the same inapplicable cases.  And, regardless of the merits of the new theory of restitution, the County has once again failed to offer *any* evidence to support its methodology for calculating the value of the loss of honest services by Greene, Creighton, and Stone.[9]  Indeed, by seeking restitution "in an amount between $385,815.11 and $964,537.77," Doc. 41-1, p. 7, the County itself  has conceded that it cannot establish actual loss and therefore resorts, instead, to arbitrary speculation, which is plainly prohibited as the basis of any restitution award.

And the Government, which must carry the burden of demonstrating the County's entitlement to restitution, has not provided the Court with any evidence to justify or support the County's submission.  Rather, the Government has simply adopted the County's contentions

---

[7] *See* p. 4, notes 2 and 3, *supra*.

[8] Mr. Wiseman was surprised and disappointed that the Government not only forwarded the County's fourteenth-hour submission to the Court as it had told Mr. Wiseman's counsel it planned to do but, additionally joined in the County's submission.  This course was contrary to multiple representations made to counsel for Mr. Wiseman that the Government intended to "stand neutral" on the substance of the restitution claims and simply serve as the filing party for the County as the holder of the ECF login. Doc. 41, p. 2.  This is now the second time that the Government has reneged, without warning, on a material commitment made to Mr. Wiseman in this case. The first time the Government unexpectedly changed its position (over the objection of AUSA Edwards, who has been consummately forthright and professional throughout this difficult case), the United States Attorney's Office reversed course, honored its original commitment, and mostly rectified the damage done from the temporary change in position.  We certainly hope that, given time to reflect upon the prior commitments made to Mr. Wiseman and the lack of factual or legal merit to the County's position, the Government will honor its representations to Mr. Wiseman and reconsider the decision to take a substantive position in favor of the County's submission.

[9] As will be discussed in more detail, *infra*, the County's current theory of restitution is new only as it pertains to Mr. Wiseman.  But not only is the County's theory of restitution new to Mr. Wiseman, the methodology in calculating the amount of the lost honest services attributable to Mr. Wiseman is completely at odds with the position it took with respect to Mr. Wiseman's co-defendants.

without any factual amplification, legal analysis, or evidentiary support. Accordingly, the Government and the County have provided this Court with no valid factual or legal basis to enter an award of restitution, and, therefore, the County's claim for restitution in any amount should be denied.

## THE APPLICABLE LAW

Federal restitution is solely a creature of statute. "Federal courts do not have the inherent authority to order restitution but must rely on a statutory source to do so. As such, discretion in ordering restitution is circumscribed by the procedural and substantive protection*s* of the statute authorizing restitution." *United States v. Ritchie*, 858 F.3d 201, 206 (4th Cir. 2017) (citations and quotations omitted).

That restitution is not warranted in this case is proved by the Mandatory Victim Restitution Act (MVRA) itself, which provides, in pertinent part, that restitution shall be ordered for any "victim" of an offense covered by the statute who has been "*directly and proximately harmed*" because of the offense. 18 U.S.C. § 3663A(a)(2). As the statute makes plain and the Supreme Court has noted, "but for" causation is not sufficient to support a restitution order. Instead, to be a "victim" under the MVRA, an individual or entity must demonstrate that the defendant's actions were the *proximate cause* of the individual or entities damages. "*Praoline v. United States*, 572 U.S. 434, 448 (2014). "So to say that one event was a proximate cause of another means that it was *not just any cause*, but one with a *sufficient connection to the result*." *Id*. at 444 (emphasis added).

It is not sufficient for the County to allege that it suffered harm due to the loss of the honest services of its corrupt employees – it must demonstrate that Mr. Wiseman's conduct was the proximate cause of that harm; that is, that he caused and was responsible for the County's alleged

harm. This the County cannot do and has not done. Instead, the County has asked this Court to presume proximate causation, which is contrary to the entire body of law addressing the MVRA's causation requirement.

Additionally, restitution for federal criminal purposes requires proof of an *actual* loss, not intended loss, gain, or some other arbitrary substitute for direct pecuniary harm. *See, e.g., United States v. Stone*, 866 F.3d 219, 226 (4th Cir. 2017) ("A court may base its restitution order on *actual losses only*, not intended losses.") (emphasis added); *United States v. Fair,* 699 F.3d 508, 513 (D.C. Cir. 2012) ("The circuit courts of appeals are in general agreement that the defendant's gain is not an appropriate measure of the victim's actual loss in MVRA calculations. . . . And [u]nlike loss under the Guidelines, the MVRA requires proof of actual loss and does not allow alternative metrics, such as gain.[]") (internal citations omitted); *United States v. Harvey*, 532 F.3d 326, 341 (4th Cir.2008) (A defendant's gain is not a proper substitute for proof of actual damages*); United States v. Badaracco*, 954 F.2d 928, 942–43 (3rd Cir. 1992) (restitution is not authorized where the Government fails to offer argument, let alone evidence, of the basis for the restitution claim).

A victim's proof of actual loss cannot be arbitrary or speculative, but instead must be "a reasonable determination" that is "rooted in a calculation of *actual lass*." *United States v. Gallant,* 537 F.3d 1202, 1252 (10th Cir.2008) (emphasis added). Neither the proof of loss nor the basis for its calculation can be based upon speculation or arbitrary assumptions by the victim. *See,* e.g., *United States v. Adorno*, 950 F. Supp. 2d 426, 431 (E.D.N.Y. 2013) (restitution award not appropriate when victim has arbitrarily selected a percentage of a corrupt employee's salary as its loss and provided no basis or proof for those loss calculations). *See also United States v. Steele*, 897 F.3d 606, 613-14 (victim's unsupported assertion of amount of restitution due was insufficient

to meet the requirements of the MVRA); *United States v. Dove*, 585 F. Supp. 2d 865, 871-72 (W.D. Va. 2008) (restitution not appropriate where there is no suggested logical basis for making the loss calculation on the basis of the methodology selected and which is simply an arbitrary and unsupported estimate of the victims' damages).

And, the "burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the *Government.*" *United States v. Steele*, *supra*, 897 F.3d at 613 (emphasis in original); *United States v. Fair*, 699 F.3d at 516 (MVRA, places the burden on the Government to prove actual loss by a preponderance of the evidence.)

The MVRA also mandates specific procedures and deadlines for a victim to put forth a claim for restitution. The fact that the County has taken over a year to spring its current theory of restitution and "methodology" for calculating its loss on Mr. Wiseman, leaving just seven days under the local rules to respond,[10] calls into serious question the sincerity and credibility of the County's present restitution claim.[11]

And, while the Government has now unexpectedly adopted the County's submission, it has done so without offering any legal or factual analysis or a shred of evidentiary support for either of the County's restitution theories. As importantly, the County's (and therefore the Government's) positions are based solely upon arbitrary speculation which is directly contrary to applicable law and the facts here. These bases alone are sufficient justifications for the Court to deny the County's claim. *See e.g. Steele*, *supra*, 897 F.3d at 613-14 (Government's "rubberstamp"

---

[10] Mr. Wiseman gratefully acknowledges that the Court granted his motion for a seven-day extension to respond to the County's latest restitution claim and, thus, he had 14 days to respond to the County's current restitution theory. Doc. 45.

[11] As troubling is the fact that the County's current submission is materially different in both methodology and amount from its initial restitution demand filed with this Court under oath.

of victim's unsupported assertion of amount of restitution due was insufficient to meet the requirements of the MVRA).

The MVRA likely applies to honest services fraud[12], and, as such, the County would qualify as a "victim" under the MVRA if it could prove that it suffered actual pecuniary losses that were directly and proximately caused by the specific conduct to which Mr. Wiseman pleaded guilty. Here, however, because EIC's contracts were not inflated, the County has not suffered *any* actual loss because of Mr. Wiseman's conduct. Indeed, the County recognized substantial savings in the amount of almost $300,000 per year per year because it hired EIC and Mr. Wiseman. Doc. 28, p. 19.

The MVRA also specifically provides that it "shall not apply if the court finds, from the facts on the record that- -

> (B) determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

3663A(c)(3)(B) ( the complexity exception); *see also United States v. Adorno*, *supra*, 950 F. Supp. 2d at 431 ("The *MVRA wisely provides*, in 18 U.S.C. § 3663A(c)(3)(B), that, if the court finds that *'complex issues of fact* related to the cause or amount of the victim's losses *would complicate or prolong the sentencing process* to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process*' then the court may choose not to award* restitution.").

---

[12] Some federal courts have looked to the underlying nature of the offense, rather than to the conviction itself, to determine whether the MVRA applies to the conviction  Here, the underlying basis of Mr. Wiseman's honest services conviction is bribery, and some courts have held that a bribery conviction under § 666 does not fall within the MVRA. *See e.g. United States v. Adorno*, *supra*, 950 F.Supp. 2d at 429 (discussing the question of whether a conviction based on bribery qualifies as an offense of "fraud and deceit" under the MVRA.  To the extent this Court adopted that position, the MVRA would not apply here, and restitution would be denied for that reason as well.

And, in making this determination, the Court is entitled to consider the fact that the County has a pending civil suit against Mr. Wiseman:

> While the availability of other relief is deemed irrelevant to the process of calculating the *amount of* a restitution award [under the MVRA], it is not necessarily irrelevant to the *availability of* such an award under § 3663A. T*he existence of pending civil litigation may in some cases be relevant to the balancing test established by [the MVRA's] complexity exception*.

*In Re Brown*, 932 F.3d 162, 175 (4th Cir. 2019) (quoting with approval, *United States v. Gallant*, supra, 537 F.3d at 1254 (emphasis in original).

When it amended the MVRA in 1996, the Senate echoed the idea that restitution under the MVRA was not intended to bog district courts down in complex calculations that are better suited to resolution in other forums, such as civil litigation:

> It is the committee's intent that courts order full restitution to all identifiable victims of covered offenses, *while guaranteeing that the sentencing phase of criminal trials do not become fora for the determination of facts and issues better suited to civil proceedings.* ....
>
> *In all cases,* it is the committee's intent that *highly complex issues related to the cause or amount of a victim's loss not be resolved under the provisions of mandatory restitution*. The committee believes that losses *in which the amount of the victim's losses are speculative, or in which the victim's loss is not clearly causally linked to the offense, should not be subject to mandatory restitution*.

S. Rep. No. 104–179, at 18–19, U. S. Code Cong. & Admin. News 1996, pp. 924, 932 (emphasis added); *United States v. Ferdman,* 779 F.3d 1129, 1133 (10th Cir. 2017) ("All this is *not to say that the restitution phase of criminal sentencings should become a substitute for civil trials*.") (emphasis added).

Finally, the MVRA mandates that restitution orders "shall be issued and enforced" pursuant to 18 U.S.C. § 3664.  To provide fundamental fairness and Due Process, Section 3664 requires

adherence to the following procedural steps which circumscribe the Court's authority to order restitution. *See United States v. Ritchie*, *supra*.

First, the U.S. Probation Officer is required to obtain and include in the PSR information "sufficient for the court to fashion a restitution order." § 3664(a). The Probation Officer in this case did her best to carry out this statutory mandate but she could not include in her draft report the information that the County declined to provide. Doc. 20, ¶ 24.

Second, the Court is required to share with both the government and the defense any and all information provided by the alleged victim that pertains to the issue of restitution. 18 U.S.C. § 3664(b). Thus, although the time for filing objections to the PSR pursuant to Rule 32 had passed, Mr. Wiseman was allowed additional time to file objections to the County's tardy restitution claim. Doc. 19.

The MVRA also provides the time for submitting restitution claims: "Upon the request of the probation officer, *but not later than 60 days prior to the date initially set for sentencing*, the attorney for the Government, after consulting, to the extent practicable, with all identified victims, shall promptly provide the probation officer with a listing of the amounts subject to restitution." 18 U.S.C. § 3664(d)(1) (emphasis added). The County's claim for restitution, based on the theory that EIC's contracts with the County were inflated, which was submitted to the Probation Officer more than ninety days prior to Mr. Wiseman's August 28th sentencing hearing, *albeit* late, met this statutory requirement. Doc. 20, ¶ 24. And, Mr. Wiseman was fully prepared to fully discredit that theory on the day of his sentencing.

The County's latest submission, adopted by the Government, thirty days *after* the sentencing hearing in this case does not comply with the plain language of the procedural requirements of the MVRA. Indeed, rather than using the extra time granted to ascertain its losses

associated with its inflated-contract theory, as contemplated by 18 U.S.C. § 3664(d)(5), the County used that time to craft a new theory of restitution and completely new amounts of loss pursuant to that theory, which is not only contrary to the MVRA's requirements, but also seems to exceed the authority granted to the parties by this Court.[13]  At sentencing, this Court ordered the Parties to submit, within thirty (30) days, any additional material in support of their claims for or defenses to restitution.  This Court did not grant the County leeway to concoct an entirely new (and inconsistent) theory of restitution and then sandbag Mr. Wiseman with that novel demand.  For this independent reason, this Court is well within its authority to discount the County's post-sentencing restitution theory and demand.

Section 3664 further provides that the Court shall resolve disputes regarding the amount of restitution by a preponderance of the evidence and the "burden of demonstrating the amount of the loss sustained by victims as a result of the offense shall be on the attorney for the Government." § 3664(d).  In other words, the statute requires *the Government* to submit *some evidence* to support a victim's claim for restitution that will at least meet the preponderance of the evidence standard.

It is not sufficient for the Government to simply pass on to the Court the victim's unsupported and unsupportable claims.  And, to sustain any restitution award, the statute certainly requires more of the Government than the mere adoption of the victim's latest restitution theory and "methodology" for calculating its alleged loss without providing the Court with any factual or legal analysis or basis of those claims.  *See Steele*, 897 F.3d at 613 ("burden of demonstrating the

---

[13] 18 U.S.C. 3664(d)(5) provides for a post-sentencing extension of time for the Government to provide information to the Court regarding restitution claims where "the victim's losses are not ascertainable by the date that is 10 days prior to sentencing. . ."  But, nothing in this provision authorizes the Government put forth a victim's newly created theory of restitution and completely new loss amounts after the date of sentencing simply because it could not demonstrate *any* damages under an earlier theory.

amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the *Government*.") (emphasis in original).

Section 3664 further provides that no victim should receive a "windfall" by receiving restitution in an amount greater than its actual losses. Thus, Section 3664(j)(2) provides that any amount paid to a victim "under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in a Federal or State civil proceeding, to the extent provided by the law of the State." 18 U.S.C. § 3663(A)(b)(1)(B)(i), (ii) (The order of restitution shall require that a defendant convicted of an offense involving the loss of property, to pay an amount equal to the greater of the value of the lost property on the date of loss or the date of sentencing, less the value "of any part of the property that is returned as a result of an order of restitution." 18 U.S.C. § 3663A(b)(1)(B). *See United States v. Ferdman*, *supra*, 779 F.3d at 1132 ("Restitution must not unjustly enrich crime victims or provide them a windfall." ); *United States v. Fair*, *supra,* 699 F.3d at 512 ("[T]he MVRA does not authorize restitution in excess of the amount of the victim's losses.").

In short, once a victim has recovered all of the actual damages that proximately and directly resulted from the offense of a defendant's conviction, no further restitution may be ordered or at least the Court must reduce the amount of restitution by the amounts already recovered by the victim. Because the County cannot show any actual loss, because the County's restitution theory du jour is factually and legally unsupportable, and because the County has recovered all of the restitution it believed it was due from Greene, Creighton, and Stone, it is not entitled to more from Mr. Wiseman.

# I. THE COUNTY'S CLAIMS FOR RESTITUTION BASED BOTH ITS "INFLAFTED-CONTRACTS" THEORY AND ITS "LOST-HONEST-SERVICES THEORY" LACK ANY LEGAL OR EVIDENTIARY SUPPORT

Whether this Court looks to the County's original theory of restitution based upon the supposedly inflated contracts or the County's recently crafted argument that the County should be able to gouge Mr. Wiseman by demanding a sum of between $385,815.11 and $964,537, especially where the County has failed to demonstrate that it has suffered any actual, pecuniary loss. And, that fact alone defeats any right to recover restitution under the plain language of the MVRA.

Even if the County had incurred actual pecuniary loss based upon Mr. Wiseman's actions, which it did not, Mr. Wiseman would be entitled to a set off or credit for all of the value he conveyed to the County as part of the scheme. *See, e.g., United States v. Murray*, 39 Fed Appx. 885, 888 (4th Cir. 2002) ("Under the sound reasoning of [*United States v. Parsons,* 109 F.3d 1002 (4th Cir.1997), and *United States v. Dawkins,* 202 F.3d 711 (4th Cir.2000)], the amount of loss for restitution purposes in a fraud case is *the amount the victim would not have paid but for the fraud*.") Based on Mr. Wiseman's professional experience and expertise, the County not only saved approximately $300,000 per year, it receives annual revenue of nearly $750,000. Doc. 28, p. 10. And that offset alone would exceed the entire speculative range of restitution that the County has most recently estimated it might be due.

First, it cannot be disputed on this record that Mr. Wiseman fully performed the contracts at issue and the uncontradicted evidence further proves that those contracts were not inflated. The County, therefore, suffered no actual loss on the EIC contracts, and no restitution is due as to the contracts themselves. Indeed, by paying for the illegal trips out of EIC's pocket instead of passing those costs on to the County in the form of padded or inflated contracts, Mr. Wiseman actually

mitigated the actual pecuniary loss that the County incurred from the actions of its corrupt employees.

Second, even if the County's new honest services loss theory were not both completely arbitrary and contrary to every case on restitution in the country, the County's own pleadings and this Court's restitution orders show that the highest value that the County could have conceivably set for those alleged losses is less than $100,000. By the County's own admission, Mr. Wiseman could not possibly owe the sums the County currently claims it is due.

### A. Mr. Wiseman Has Proved Through Several Unrebutted Experts That EIC's Contracts with the County Were Not and Could Not Have Been Inflated or Padded.

The Government had the burden, under the County's "padded contracts" theory of restitution, to put forth evidence that EIC's contracts were, in fact, inflated. Here, the Government has not even attempted to do so.[14]  Indeed, the only position the Government has taken about restitution in this case is to adopt the County's newly concocted restitution theory, which is entirely inconsistent with the County's initial restitution filing under oath.

Thus, the Government never adopted or supported the inflated contracts theory at all, and neither the Government nor the County submitted a scintilla of evidence in support of the same. These fatal deficiencies fall well short of the minimum that is required by the MVRA and require that restitution be denied on this theory.  *See Steele*, 897 F.3d at 613-14 (Government's rubberstamp of victims unsupported loss estimate was not a sufficient basis to impose an award of restitution); *United States v. Mullins*, 971 F.2d 1138, 1147 (4th Cir. 1992) (Government did not

---

[14] To its credit, the Government has steadfastly resisted endorsing the County's restitution claim based on the theory that the contracts were inflated.

Case 1:19-cr-00017-RJC-WCM   Document 46   Filed 10/10/19   Page 19 of 53

meet its burden to prove amount of restitution by simply submitting victim's unsupported claim of loss).

Although he had no obligation to do so in light of the Government's failure to meet its burden of production or proof as to the inflated contracts theory, Mr. Wiseman nonetheless dedicated the time and resources to affirmatively prove, through unrebutted expert testimony and reports,[15] that the EIC contracts with the County were not and *could not have* been inflated or padded. Because the contracts were not padded, that necessarily means that the County suffered *no pecuniary loss* from contracting with EIC.

Indeed, the fact that the contracts were not padded or inflated also means that EIC, and *not* the County, paid for the trips out of its own profit and overhead, thus ensuring that the County would not incur financial damage from the scheme, at least from EIC or Mr. Wiseman. And as Former Federal Agent Ron Taylor's Expert Report shows, the County actually profited from having EIC as its outside professional engineer to the tune of more than $300,000 per year in cost savings.

### B. The Government Has Failed to Establish that the County is Entitled to Restitution on the Basis of the Loss of the Honest Services of the Corrupt County Employees, Greene, Creighton, and Stone.

More than eleven months after filing the lawsuit against Mr. Wiseman in September of 2018 alleging that his company inflated the contracts with the County; more than four months after the County's tardy submission to the Probation Officer in May of 2019 repeating this same unsubstantiated claim; and nearly a month after the sentencing hearing in this case on August 28th, the County has had an epiphany: Mr. Wiseman is responsible for the intangible and speculative

---

[15] All three reports reach the same conclusion, albeit from different analytical approaches: Mr. Wiseman did not inflate his contracts with the County in order to recoup the expenses he paid on behalf of the corrupt County officials. Accordingly, the County is not entitled to restitution on the unsupported, and now completely debunked, theory that the contracts between EIC and the County were inflated

loss of the County's right to the honest services of it corrupt officials. Never mind that this theory of restitution stands in contradiction to the County's initial submission to this Court under oath and that no court has adopted the County's legal theory (and at least one court has surveyed the applicable cases and has rejected this theory as applied to non-employees). *See Rahal*, 2015 WL 13936602, at *9, n. 9.

Never mind that neither the County nor the Government has provided this Court with a single shred of evidence supporting this theory or that the facts in this record prove that the County not only benefitted by more than $300,000 a year by contracting with EIC but also that EIC's refusal to pad its contracts at the County's expense actually helped minimize the actual loss the County suffered through the actions of its corrupt government officials. And never mind that the County made no such demand for restitution on this legal theory from Greene, Creighton, or Stone, the very corrupt employees who undisputedly fleeced the County in numerous ways associated with the illegal trips at issue.

Undeterred by any of these facts, the County now contends that it is entitled to $385,815.11 and $964,537.77. The County's speculative estimate of its loss based on this theory is unsupported and unsupportable both factually and legally.

1. *The County's Theory of Restitution is Not Factually Sustainable*

The County's latest theory of restitution is based on this simple but wholly inaccurate deductive logic: 1) Mr. Wiseman has been convicted of conspiracy to commit honest services fraud with Greene, Creighton, and Stone; 2) because Greene, Creighton and Stone failed to provide the full measure of the honest services for which they were paid, the County has suffered a loss; 3) the speculative estimated value of the loss of honest services by Greene, Creighton, and Stone is 10% to 25% of the combined salaries that those corrupt employees were paid during the

life of the conspiracy; 4) Mr. Wiseman is responsible for the entire loss of the value of the honest services that Greene, Creighton, and Stone failed to provide; and, therefore, 5) Mr. Wiseman should be required to pay restitution of 10% to 25% of the gross salaries of his co-defendants during the four years during which the conspiracy existed. But as with any attempt at deductive argument, if all of the premises are not true, the conclusion is also false.

As explained in greater detail below, the County's legal theory is unsupported by any case in this Circuit or any other. As importantly, however, even if the legal theory were viable, the County's complete failure to provide anything except a theory of restitution and an arbitrary calculation of loss untethered to any actual evidence or reasonable method of calculation is fatal to its claim. *See, e.g., Adorno*, 950 F. Supp. 2d at 431-32 (rejecting restitution request by city, which was the victim in a bribery conspiracy, for claim based on 25% of Adorno salary for the two years of the bribery scheme when city failed to provide any basis for the 25% figure).

Honest services fraud is, by its nature, an intangible right for which it is virtually impossible to place a value. Indeed, the law is clear that proof of an actual pecuniary harm is not necessary to obtain a conviction for the crime of honest services fraud. *See e.g. United States v. Vineyard* 286 F.3d 320, 329 (4th Cir. 2001) (honest service fraud does not require proof of actual economic harm); *United States v. Silvano*, 812 F.2d 754, 760 (1st Cir. 1987) (proof of profit to the defendant or economic harm to the public is not required to prove honest services fraud).

Thus, the honest services fraud statute itself contemplates that honest services cases may not have any actual, pecuniary loss such as is required for an award of restitution. *See also United States v. Bryant*, 655 F.3d 232, 254 (3d Cir. 2011) (noting that the intangible losses associated with honest services fraud cannot be recovered under the MVRA while actual, proved, pecuniary losses are cognizable under the MVRA). And federal courts have noted that a defendant

can commit and even profit from a crime without causing an actual loss to a victim. *See, e.g., United States v. Chalupnik*, 514 F.3d 748, 752 (8th Cir. 2008) (noting that defendant can profit from a crime without causing actual loss to a victim).

To obtain restitution under the MVRA in an honest services case, then, the alleged victim must prove that the deprivation of honest services resulted in an actual, pecuniary loss that was directly and proximately cause by the defendant. Here, neither the County nor the Government have provided any actual evidence that the County did, in fact, suffer an additional, actual pecuniary loss from its employees' honest services fraud outside of the actions taken by those employees to fleece the County for additional funds related to the illegal trips, as the MVRA would require for this Court to enter a restitution order based upon a refunding of any portion of the employees' salaries. In fact, the evidence in the record referenced above demonstrates that despite the honest services fraud here, the County employees fully performed their designated job functions, often with distinction (as did Mr. Wiseman). And Mr. Wiseman has affirmatively proved that the County suffered no actual pecuniary loss related to EIC's contracts and the illegal trips.

Even if the County could show a pecuniary harm associated with the loss their employees' honest services, itself a questionable proposition, the County has presented no evidence that these losses were directly and proximately caused by Mr. Wiseman. Indeed, the record evidence is again to the contrary. As Greene and Creighton have admitted, Greene was the mastermind of the illegal trip scheme, she and Creighton came to Mr. Wiseman demanding these trips, and both Greene and Creighton were involved in other fraudulent schemes that preceded and co-existed with their conspiracy with Mr. Wiseman. On the record evidence as it exists, then, Greene and Creighton

came to Mr. Wiseman as already dishonest and corrupt employees.  There is certainly no evidence in the record to suggest that Mr. Wiseman caused their earlier corruption.

But even if the Government and the County could somehow overcome those insurmountable obstacles to restitution imposed by the MVRA, neither has provided any evidence or empirical data that would support their random and arbitrary selection of the salary percentages they have used here.  In fact, merely by asking for "10% to 25% of the gross salaries paid to [the corrupt County] employees for restitution in a range of  $385,815.11 and $964,537.77, the County inadvertently admits that its restitution demand and calculations are arbitrary and imprecise guesses, not the quantum of proof and precision  required by the MVRA.  *See, e.g. Ferdman*, 779 F.3d at 1133 ("Considered in its entirety, however, the MVRA undoubtedly *"require[s] some precision when calculating restitution. **Speculation and rough justice are not permitted**."*)  (emphasis added).  The County's current claim conveniently ignores the fact that some of the salary loss would have to be allocated to the other schemes in which these defendants were involved.

Specifically, the Government, and Greene have stipulated that the losses attributable to Greene related to the illegal trip fraud was only between $95,000 and $150,000.  *Id*.  That loss amount includes amounts that Greene billed the County for personal trips already paid for by Mr. Wiseman.  And, it also includes the value of the unused annual leave for which Greene was paid while on those personal trips.  Neither of those losses were caused by or can be attributed to Mr. Wiseman.

The Government and Creighton stipulated that his criminal conduct associated with the honest services fraud conspiracy with Mr. Wiseman resulted in a loss to the County of between $40,000 and $95,000.  Case No. 1:18-cr-88, Doc. 20, ¶ 8.c.  Stone's plea agreement stipulates to

the same loss amount. *Id*. at Doc. 27, ¶ 8.c. As with Greene, the loss amounts for Creighton and Stone included amounts they billed the County for personal trips already paid for by Mr. Wiseman. And, it also includes the value of the unused annual leave for which Creighton and Stone were paid while on those personal trips. As noted, those losses were not caused by and cannot be attributed to Mr. Wiseman.

According to the County's attorneys, the loss associated with Creighton's participation in the honest services fraud with Mr. Wiseman, or the value of the trips, was approximately $36,000. Attachment A. Given that Greene, took about the same number of personal trips as Creighton, it is reasonable to assume that the County's loss associated with her participation in the conspiracy with Mr. Wiseman was approximately the same. Therefore, Greene's participation in the honest services fraud with Mr. Wiseman represents approximately 5% of her total, overall dishonest conduct. ($36,000 ÷ $750,000).

According to the County, Greene's gross salary over the course of the life of the conspiracy with Mr. Wiseman was approximately $1.6 million. Doc. 41-1, p. 3. Therefore, at most only 5% of Greene's gross salary, or about $84,000, would be the amount that could arguably be used as the basis to value the County's loss associated with the conspiracy with Mr. Wiseman, the other 95% of Greene's salary serving as the basis for calculating the County's loss associated with Greene's other fraudulent conduct.

Using the County's completely arbitrary and wholly unproved percentage of 10% of the portion of Greene's salary which may be used to determine the County's loss, the total amount of loss that could be ascribed to Greene's and Mr. Wiseman's deprivation of the County's right to honest services is only $8,400 (10% of $84,000). And, because Mr. Wiseman would at most be

responsible for 50% of that alleged loss, he could not be held be responsible for restitution to the County for more than $4,200.

Applying this same analysis for Creighton and Stone, the following table illustrates the most Mr. Wiseman could be required to pay in restitution to the County even if its current theory were factually or legally viable (which it is not):

| Greene | $36,000[16] | $750,000[17] | 5%[18] | $1,597,000[19] | $79,850[20] | $7,980[21] | $3,990[22] |
|---|---|---|---|---|---|---|---|
| Creighton | $36,000 | $153,000 | 24% | $1,117,000 | $268,000 | 26,800 | $13,400 |
| Stone | $24,000 | $147,000 | 16% | $1,145,000 | $183,200 | 18,320 | $9,160 |

Thus, even under the County's own theory, Mr. Wiseman would owe less than $27,000, without even considering the MVRA's required offsets for the benefit the County received from his services and those of his co-defendants, which appear from the record evidence to exceed the value that an otherwise honest employee would have provided. Even if the County's upper percentage of 25% were used in these calculations, the amount of restitution "owed" by Mr. Wiseman would not even reach $70,000. That is a far cry from the preposterous range of "between $385,815.11

[16] The total amount of the County's loss attributable to the honest services fraud with Mr. Wiseman.

[17] The value of the County's loss based on the total amount of each defendant's criminal conduct as established by the amounts of restitution the County accepted from those defendants.

[18] The percentage of each defendant's salary that can be attributed to the conspiracy with Mr. Wiseman. For example, for Greene, that is $36,000 divided by $750,000

[19] The gross salaries for each defendant based on the County's submission. Doc. 41-1.

[20] The amount of defendants' salaries which may be used to calculate the losses associated with each defendant's participation in the honest services fraud with Mr. Wiseman. (Percentage of the County's loss associated with the conspiracy with Mr. Wiseman multiplied by the gross salary for each defendant.).

[21] The amount of loss suffered by the County using a percentage of 10% of the salaries attributable to Greene's, Creighton's, and Stone's conspiracy to commit honest services fraud with Mr. Wiseman.

[22] Fifty percent of the restitution due the County based on its theory of lost honest services attributable to Mr. Wiseman, with the remaining 50% due from Mr. Wiseman's co-defendants.

and $964,537.77" that the County claims it is due and upon which the Government has placed its imprimatur.

Of course, restitution should not (and cannot, consistent with the requirements of the MVRA) be ordered on the County's current theory for the innumerable reasons set forth herein. But even if it were, the resulting restitution amount would be a mere fraction of the County's current outrageous demand.

For all of these reasons, the County's restitution demand for a portion of its own corrupt employees' salaries is entirely unsupported by any evidence, and the MVRA, therefore, prohibits the entry of a restitution order on this basis.

2.      *The County's Claim for Restitution Based on Mr. Wiseman's Conviction for Honest Services Fraud is Not Legally Sustainable*

The County claims that it should receive restitution under the MVRA based on the loss of the honest services of its corrupt employees, Greene, Creighton, and Stone. Docl 41-1. In support of its claim, the County cites cases for the unremarkable proposition that honest services fraud is an offense which falls within the ambit of the MVRA. *Id*. at 3. And, the County argues, and that, as a victim of such a fraud by Mr. Wiseman and his co-defendants, it is entitled to be recompensed through an award of criminal restitution. *Id*. at 3.

Mr. Wiseman takes no issue with those general, legal axioms. As noted above, the MVRA can apply to honest services fraud, and, as such, the County would qualify as a "victim" under the MVRA if it could prove that it suffered actual pecuniary losses that were directly and proximately caused by the specific conduct to which Mr. Wiseman pleaded guilty. ). *See United States v. Harvey*, *supra* (defendants convicted of honest services fraud were subject to pay restitution under 18 U.S.C. § 3663).

Here, however, the losses for which the County currently seeks restitution are too speculative and attenuated as to Mr. Wiseman to support an award of restitution. *See, e.g. United States v. Chapulnik*, 514 F.3d 748, 752 (8th Cir. 2008) ("A more fundamental problem [with the Government's restitution theory] is that *proof of [actual loss], may not be 'based entirely upon speculation.'*" (emphasis added); *Ferdman*, 779 F.3d at 1133 ("Considered in its entirety, however, **the MVRA undoubtedly "require[s] some precision** when calculating restitution. **Speculation and rough justice are not permitted**.") (emphasis added). While there is no question that the County suffered actual losses caused by its own corrupt employees in relation to the travel that EIC paid for by their submissions of requests for additional reimbursement from the County, by not taking PTO, and the like.

But Mr. Wiseman did not proximately cause those losses – indeed, he was not even aware of them. And while the County may well have been within its rights to seek part of Greene's, Creighton's, and Stone's salaries as part of their restitution orders, they did not do so. Even if the County had done so and provided evidence, as opposed to guesswork and speculation, to support such an award, that portion of restitution would still not be sufficiently tied to Mr., Wiseman under the MVRA to support including the refunding of salary by those employees in any award of restitution to be made by Mr. Wiseman.

The County, however, improperly attempts to argue otherwise by extrapolating from cases from other circuits in which corrupt employees (not outside contractors) have been required to pay restitution based upon a percentage of the income they received during the time that they provided dishonest services to their employer. But this method of calculating restitution, even if valid for corrupt employees, is not applicable to an outside contractor, like Mr. Wiseman.

No Court in any jurisdiction that undersigned counsel could find have independently adopted such a theory on its merits, and at least one court has specifically rejected just such a theory of restitution against an outside contractor. *United States v. Rahal*, *supra*, Case No. 2:08-CR-0566, 2015 WL 13736602, *9, n.9 (E.D. Cal. Nov. 1, 2015).[23] Important in this case, while the Fourth Circuit has not adjudicated this issue on its specific merits, a large body of Fourth Circuit case law makes clear that the Fourth Circuit would reject it as inconsistent with the MVRA.

The County has failed to identify even one appellate decision that has applied its concededly "arbitrary" short-cut method of determining restitution, even in an honest services fraud case, to an outside contractor, and Mr. Wiseman has located none. Every appellate decision cited in the County's memorandum has considered how to determine restitution for a corrupt employee only, and none have applied that theory of restitution to an outside contractor.

For example, in *United States v. Skowron*, 529 Fed. Appx. 71, 73 (2nd Cir. 2013), the the defendant was ordered to pay "his former employer Morgan Stanley restitution in the amount of $10,247,853.49. That sum represents 20% of Skowron's compensation at Morgan Stanley between 2007 and 2010."

In *United States v. Bryant*, *supra*, 655 F.3d at 237, the Court approved an order of restitution requiring the defendant, who was a state senator but received salary as a purported university employee was required to repay his entire salary from a "low-show" job at [the university] (meaning he provided only minimal or nominal services.") And, in that case, the

---

[23] The *Rahal* Court researched all the cases that it could find imposing as part of a restitution award a recoupment of some portion of a defendant's salary and concluded that those awards had only been imposed as against the employee who received the bribes, not against the party who paid the bribe. *Rahal*, 2015 WL 13736602, *9, n.9 (collecting cases). The Court, therefore, declined to include this salary component in the restitution order to the non-employee who paid the bribes.

*evidence* established that the defendant's entire "salary and benefits—nominally for his public relations work—were in fact provided in exchange for his abuse of [his public] office." *Id*. at 243.

*United States v. Crawley*, 533 F.3d 349 (5th Cir. 2008), involved a union official who obtained his office by fraud. He was convicted under both an honest services fraud and a pecuniary fraud theory. *Id*. at     Accordingly, the court held that by procuring his office by fraud, the defendant rendered "any service valueless *ab initio*." *Id*. at 358. Additionally, the Court held that because the defendant's entire salary and pension was obtained by fraud, the union was entitled to the return of the total amount of those benefits as restitution. *Id*. at 359.

In *United States v. Bahel*, 662 F.3d 610, 650 (2nd Cir. 2011), a dishonest employee was required to pay 10% of his salary as restitution to his former employer. *United States v. Sapoznik, supra*, involved a corrupt police chief who was required to forfeit 25% of the salary he received during the four years he was accepting bribes. 161 F.3d 1121-22. And, finally, in *United States v. Fiorentino*, 149 F. Supp. 3d 1352, 1361 (S.D. Fla 2016), two corrupt employees were required to pay 20% of their salaries as restitution to their former employer.

Not one of the cases cited by the County involved a non-employee contractor like Mr. Mr. Wiseman.[24] And, despite an extensive review of cases within and outside the Fourth Circuit, Mr. Wiseman has uncovered none.

More significantly, no Fourth Circuit case has approved of or adopted the restitution theory that any portion of a dishonest employee's salary may be used to calculate restitution for a non-employee defendant. And many courts have rejected the notion that arbitrary, speculative

---

[24] The County misleading claims that "[m]ost of the published opinions regarding restitution for loss of honest services concern defendant-employees, whose honest services were lost." It would be more accurate to say *all* of the published and unpublished decisions that have approved of the County's arbitrary method of calculating the value of lost honest services are concerned with corrupt employees.

calculations of a corrupt employee's salary or any other pecuniary measure can ever be used to support a restitution award consistent with the MVRA. *Ferdman*, 779 F.3d at 1133 (MVRA requires some precision in calculating restitution; speculation and rough justice are not permitted."), *Adorno*, 950 F. Supp. 2d. at 431-32, (cannot arbitrarily pick a percentage of corrupt employees' salaries to establish actual loss for outside contractor).

The County then cites to *United States v. Wilkinson*, 590 F.3d 259 (4th Cir. 2010), as its sole case that supposedly supports the inclusion of a percentage of a corrupt employee's salary to determine restitution for an outside contractor. But a close examination of *Wilkinson* reveals that this case, too, fails to support the County's theory. *Id*. at 265 (specifically noting that the issue was neither contested nor considered by the Court of Appeals)..

In *Wilkinson*, the district court did not, in fact, independently determine that Wilkinson should be ordered to pay restitution based on a percentage of the salary of the corrupt employee. Instead, the *Wilkinson* sentencing transcript explains how it came to be that Wilkinson's restitution order included a prorated portion of the corrupt employee's salary:

> In the sentencing proceeding with respect to Mr. Cartwright [Wilkinson's codefendant] *the parties agreed* there that there was an actual pecuniary loss to AVCARD of $40,926.75. And Mr. Cartwright agreed to a restitution order in that amount as reflecting AVCARD's loss of its right to Mr. Bittenbender's [the corrupt employee] honest services.

Excerpt of Wilkinson Sentencing Transcript, p. 59, attached hereto as Exhibit B (emphasis added).

In determining the amount of restitution due from Wilkinson based on the value of the lost honest services suffered by the corrupt employee's former employer, AVCARD, the district court simply adopted the restitution amount previously agreed to by Wilkinson's co-defendant:

> With respect to [Wilkinson's] revised calculated actual loss, $39,000 some odd dollars, obviously turns out to be a number close to the restitution order that was entered in Mr. Cartwright's case. *Principally, for purposes of avoiding disparity*, I'm going to enter a restitution order in the amount of $40,926.75 payable to

> AVCARD, *which of course is an order identical to that entered in the Cartwright case*, with joint and several liability.[25]

*Id.* at p. 61 (emphasis added). Although this decision was legally erroneous and a clear outlier, Wilkinson's attorneys did not appeal it, and the Fourth Circuit specifically noted that the issue of restitution with regard to AVCARD (one of several victims) was not at issue in the appeal, *id.* at 264 n. 4, a fact that even the County concedes. Doc. 41-1, p. 5.

Accordingly, the County has failed to identify even one case in which a court has held that a percentage of a corrupt employee's salary is the appropriate way to hold a non-employee responsible for restitution in an honest services fraud case. Given the Fourth Circuit's decisions rejecting speculative and arbitrary restitution calculations, and given the fact that not a single other court in any jurisdiction has ever independently imposed restitution on an outside contractor for the salaries of the corrupt government official in the honest services context, there is strong reason to doubt that Fourth Circuit would approve of this arbitrary method of determining restitution at all, but especially for an outside contractor. Indeed, a representative sample of cases from the Fourth Circuit compels the conclusion that it would not.

The seminal case on the imposition of restitution is *United States v. Mullins*, *supra*. In that case, the district court awarded restitution on the basis of the victim's unsupported claim of loss. 971 F.3d at 1146. In reversing the restitution order, the Court noted the following:

> The government is required to prove the proper amount by a preponderance of the evidence if the amount is disputed. 18 U.S.C. § 3664(d). An award of restitution under the VWPA *must be based on findings* as to the value of the property as of the date of loss or the date of sentencing, and as to the value of any part of the property that is returned, as of the date

---

[25] In fact, the *Wilkinson* Court's reasoning actually bolsters Mr. Wiseman's position with regard to restitution. In his case, unlike in *Wilkinson*, restitution was not sought with regard to any portion of Greene's, Creighton's, or Stone's salaries, and none of them conceded that some portion of their salaries were properly considered as part of their restitution. Given the low-end of the range of the guesstimate the County now requests exceeds the *total* restitution paid by the co-defendants who were only charged and convicted with regard to the illegal trips (Creighton and Greene) and exceeds the amount that even Wanda Greene, who was involved in numerous high-dollar schemes, the sentencing disparity in ordering Mr. Wiseman to pay anything remotely like what the County is requesting would be astounding.

of return. *Even if it is difficult to measure those values, nonetheless, that is what the statute requires. United States v. Angelica*, 859 F.2d 1390, 1394 (9th Cir.1988) *(*VWPA "unambiguously" requires valuation of the property at the time of   loss   or   sentencing, even if that "present[s] a difficult determination for the district court").

*Id*. (emphasis added).  Similarly, this Court should resist the County's invitation to engage in an

end-run around its burden to prove actual loss by supplanting this required proof with

unsubstantiated and arbitrary speculation as to what losses it might have incurred simply

because of the difficulty in attempting to place a value on the loss of the honest services by Mr.

Wiseman's co-defendants.

Subsequently, in *United States v. Adams*, 19 Fed. Appx. 33, 35, (4th Cir. 2002), the Court

reversed a restitution order where the Government failed to offer any evidence to support the

victim's claim.  *Adams* has been followed by a number of courts in the Fourth Circuit.  For

example, *United States v. Dove*, 585 F. Supp. 2d 865 (D. W.VA. 2008), the district court relied on

*Adams* to deny an order of restitution:

> The cases cited by the government and RIAA offer many alternative measurements of actual loss other than diverted sales, *yet all interested parties have failed to bring sufficient evidence of loss under any theory*. There has certainly been some harm to the victims, but without more accurate estimates from the victims it would be very difficult to arrive at an accurate and fair number for a restitution award. The government and the victims who have come forward have failed to meet their burden of proof as to actual loss under § 3664(e). This failed attempt has demonstrated that although there was an injury to the market, as in *Chalupni*k, *the difficulty of determining each victim's actual loss makes the collective injury inappropriate for MVRA restitution.* 18 U.S.C.A. § 3663A(c)(3).

*Id*. at 873 (emphasis added). *See also United States v. Palicios-Cruz*, 2011 WL 1575366 (D. VA.

2011) ("Although the organizations may represent victims who have suffered pecuniary loss,

neither they nor the government has set forth any facts demonstrating which victims are entitled

to particular sums. The RIAA's victim impact statement does not identify any specific member

companies, and while the MPAA identifies numerous film companies, it does not set forth the loss

attributable to each. The government thus fails to meet its burden of proving the amount of loss attributable to each victim.").

The Fourth Circuit echoed the principles enunciated in *Mullins* in *United States v. Harvey*, *supra,* the first reported case in which the Court was compelled to wrestle with the difficult issue of calculating the amount of damages based on the loss of the intangible right to honest services. Because the district court was unable to establish the amount of the victim's actual losses, it relied on the defendant's gain as a substitute to determine the amount of harm caused by the defendant's criminal conduct. The Fourth Circuit rejected the use of a proxy for proof of actual damages:

> Here the district court erroneously used gain to approximate the amount of actual loss. While we agree that INSCOM can and should be considered a victim in this case, *any order of restitution nevertheless must be based on sufficient evidence of the amount of actual loss* incurred as a result of the fraudulently obtained contract. Profit gained by the defendants may not be used in its stead.

*Id*. at 340 (emphasis added). And the Fourth Circuit held that the Government does not meet its burden of proving the amount of restitution, as it has done here, by simply proffering the unsupported statements of the victim:

> We agree with Appellants that the government *failed to present sufficient evidence of actual loss at either trial or sentencing*. . . .[None of the evidence relied upon by the Government] establish[ed] the amount of loss [the victim] actually suffered. For example, *the government offered no facts evincing either how [the victim] was injured by [the evidence the Government relied upon] or, if so, in what amount.* Indeed, at trial, during the defense's cross-examination of two [of the victim's] officials, those officials admitted that they had no complaints about PCS's performance of the contract.

*Id*. at 339-40 (emphasis added).

Relying on *Harvey*, the district court in *United States v. Devine*, 724 F. Supp. 2d 590 (W.D. VA. 2009), refused to impose an order of restitution where the Government failed to offer any evidence to support the victim's claim:

Here, like *Harvey*, the Government has presented no evidence tending to support the proposition that DMAS suffered any actual loss, much less supporting a calculation of actual loss. It is undeniable that Advantage Care did not comply with the terms of its Provider's Contract with respect to the training of its PCAs. Further, it is undisputed that the figures in Attachment 1 to the Government's restitution memorandum accurately state the amounts billed to DMAS for services rendered by untrained PCAs. However, this does not satisfy the Government's burden of proof for purposes of proving an "actual loss" warranting an award of restitution. *The evidence does not show that these untrained PCAs performed their duties in an unsatisfactory or substandard manner, nor does it show that the Government paid more for the services rendered by untrained PCAs than it would have had to pay for comparable services rendered by properly trained PCAs*. Finally, it is uncontested that all Medicaid reimbursements were for medically necessary services, and that such services were actually rendered by employees (albeit not properly trained employees) of Advantage Care. The evidence before the Court provides no basis for concluding that the services actually rendered by the untrained PCAs was anything other than satisfactory.

*Id*. at 595 (emphasis added). As in *Devine*, the County's legal memorandum fails to provide the Court with any evidence that Mr. Wiseman's co-defendants performed their duties in an unsatisfactory manner or that the County paid more for those services than it would have otherwise paid for comparable services by wholly honest employees. Indeed, as set forth above, the evidence already before the Court is to the contrary. And, thus, as in *Devine*, the Government has failed to meet its burden.

Most recently, the Fourth Circuit once again held that the Government cannot meet its statutory burden of establishing restitution by simply handing up the unsupported claim by a victim that it has suffered damage in some unsubstantiated amount or based on some arbitrary method of calculating the amount of the loss. *Steele*, *supra*, 897 F.3d at 613. In that case, the Court noted that although district courts have discretion in determining the appropriate method of calculating a victim's loss under the MVRA, that "discretion is circumscribed by the MVRA's purpose and procedure." *Id*. at 610-611:

MVRA procedure "makes clear that the defendant is expected from the outset to repay all of the actual losses that he caused, *but no more*." *United States v.*

*Ritchie*, 858 F.3d 201, 215 (4th Cir. 2017). Thus, in calculating restitution under the MVRA, courts abuse their discretion by granting the defendant a "bailout" or *by allowing the victim to obtain a "windfall." Id.* at 215–16 (4th Cir. 2017); *accord United States v. Stone*, 866 F.3d 219, 226 (4th Cir. 2017) *("[T]he MVRA does not allow a court to ... unfairly punish a defendant by requiring him to pay back more money than he stole*." (quotation marks and citation omitted)).

*Id.* at 611 (emphasis added).

And, as in *Mullins*, the Court held that the Government does not meet its statutory burden of proving restitution by simply offering the victim's unsupported statement as its evidence of the amount of loss. *Id.* at 613. The Court noted that, as in this case, the victim impact forms provided to the victim by the Probation Officer required the victim "not only to 'state the financial loss sustained,' but also to *attach[ ]the proper substantiation records*.'" *Id.* (emphasis in original). Yet, like here, the victim "did not provide a single record to substantiate its loss." *Id. See* Doc. 20, ¶ 24.[26]

Finding that the Government, as here, merely "rubberstamped" the victim's "unsupported loss estimate" the Court had no difficulty in concluding that the district court abused its discretion by imposing restitution in any amount. "[T]he Government failed to meet its burden of proving the disputed loss amount" and, therefore, the order of restitution was set aside. *Id.* at 615. *Accord*

---

[26] The County provided no supporting documents with its submission to the Probation Officer on May 17, 2019. And, the affidavit attached to the County's latest submission can hardly be considered *evidence* of the amount of the County's claimed loss, as it is nothing more than a recitation of the sum total of the amounts paid to each of Mr. Wiseman's co-defendants between 2014 and 2017. Nothing in the County's submission makes any attempt to tether those numbers or the arbitrary percentage of those salaries that the County has apparently plucked out of the air to the alleged values of the alleged loss associated with those employees' failure to provide totally honest services. Nor has the County presented any evidence as to how Mr. Wiseman directly and proximately caused those alleged losses. And, even that document, such as it is, is misleading. The conspiracy in this case did not begin until September 2014 when Mr. Wiseman was directed to pay for a trip to Key West that had no legitimate business purpose and the conspiracy ended when Wanda Greene retired on July 1, 2017. Doc. 1, ¶¶ 11, 27. Thus, the County has included in its calculation of loss well over a year of income that was earned by Greene, Creighton, and Stone before the conspiracy began and after the conspiracy ended. Subtracting the amounts outside the conspiracy would reduce the total amount of compensation paid to Greene, Creighton, and Stone by more than $1.1 million or nearly 30% of the amount the County has relied on to craft its argument as to the amount of its loss. Whether based on its unfamiliarity with the evidence, sloppiness, or guile, this is yet another reason that this Court should have no confidence in the County's calculation of the loss in support of its restitution claim.

*United States v. Pickering*, 2018 WL 4775509 *2 (W.D. N.C. October 3, 2018) ("*unsupported loss estimates* are not compensable under the MVRA.") (emphasis added). *Cf. United States v. Freeman*, 741 F.3d 426, 437 (4th Cir. 2014) (reversing order of restitution where the Government "utterly failed to provide any evidence that the losses sustained by the purported victims here were caused by the specific conduct underlying Appellant's offense of conviction.").

Neither the Government nor the County has even acknowledged these controlling cases from the Fourth Circuit, let alone attempted to distinguish them. And with good reason: they cannot be distinguished.

These Fourth Circuit cases are in line with the overwhelming majority view in other circuits across the county. *See e.g., United States v. Adejumo*, 777 F.3d 1017, 1020 (8th Cir. 2015) (Sufficient information to support a restitution order "may be produced by witness testimony at a hearing or sworn victim statements outlining the losses which resulted from the crime. Restitution orders may not be based only on speculation, however.") (citation omitted); *United States v. Kieffer*, 681 F.3d 1143, 1171 (10th Cir. 2012) (Restitution order set aside where the Government failed offer any evidence to support the amount of loss claimed); *Ferdman*, 779 F.3d at 1133 (speculation and rough justice are not permitted as basis for restitution calculations).

In fact, in a case strikingly similar to this one, the district court declined to impose restitution on an outside contractor, like Mr. Wiseman, because the Government failed to produce any evidence that the contractor inflated his contracts with a city after bribing government officials to obtain the contracts. *Adorno*, 950 F. Supp. 2d at 427 n.1 (E.D.N.Y. 2013). Similar to this case, the City in *Adorno* sought 25% of Adorno's salary for the two-year period during which the bribe was paid**.** The Adorno Court noted, however, that other than the City's bare contention that "this amount is consistent with the case law awarding a reasonable approximation of the difference in

the value of services actually rendered and the value of the services of an honest, faithful employee," *the City offered no basis for picking this percentage as reflective of its "loss." Id.* at 431.

In declining to enter a restitution reward, the court noted that the government acknowledged "that it has no evidence tending to show that Adorno inflated contract prices by the amount of the bribe, and thus the City's contention that it suffered a pecuniary loss in this amount cannot be sustained. In the absence of a pecuniary loss, restitution is not appropriate."). *Id*. at 427 n1. *See also See United States v. Rogers*, 2019 WL 4120810 * 3 (E.D. KY August 29, 2019) (collecting cases that hold that restitution cannot be based on the unsupported submission of the victim).

In sum, the County's most recent restitution claim merely cites a handful of inapposite cases while utterly failing to provide a shred of evidence to support its loss calculations, as is statutorily required for the Government to carry its burden to show actual loss. Indeed, the restitution claim entirely omits controlling cases from this Circuit. For these reasons as well, the County's claim should be denied.

**D.      The County is Not Entitled to a Windfall Through Restitution.**

As noted above, the County has already received payments from Greene, Creighton, and Stone in a civil settlement amounting to approximately $100,000 in connection with their criminal conspiracy with Mr. Wiseman. Because the County and Government represented that the amounts covered in this settlement were sufficient to satisfy Mr. Wiseman's co-defendants'r restitution obligations as well, the Government did not request and the Court, therefore, did not order any additional restitution for those defendants during their sentencing hearings. Case No. 1:18-cr-88, Doc. 93, p. 4, 95, p.4, 105, p.4. The County's agreement to accept those payments

in satisfaction of the restitution obligation for those defendants defeats the present claim for additional restitution from Mr. Wiseman on two separate bases.

First, if Greene, Creighton, and Stone satisfied their respective restitution obligations for a total sum of less than $100,000, the County's claim that Mr. Wiseman owes an additional sum of between nearly $400,000 and $1,000,000 for those same exact losses is plainly preposterous.

And to be clear, the County has characterized the payments received from Greene, Creighton, and Stone as satisfaction of the criminal restitution, not merely a resolution of the County's civil case against those defendants. Restitution is joint and several so these amounts must be totals, not apportionments

Second, because the County has already received full satisfaction for the damages it has suffered from Greene, Creighton, and Stone, it is not entitled to recover those same losses in restitution from Mr. Wiseman. On this point, the law is unambiguous: "§ 3664 of Title 18 makes clear that the defendant is expected from the outset to repay *all* of the actual losses that he caused, *but no more.* It is these "[o]ther provisions of the statute [that] *allow the court* to *avoid* an undercompensation or *a windfall*" to the victim, *while ensuring that the defendant is not unfairly punished* for his crime by having to *pay back more* money than he stole. *United States v. Ritchie, supra*, 858 F.3d at 215 (quoting the Supreme Court's decision in *Robers v. United States*, 572 U.S. 639, 644 (2014) (emphasis added). *See also United States v. Stanley*, 309 F.3d 611, 613 (9th Cir. 2002) ("In other words, *when other parties have paid civil damages for the same loss for which a defendant is liable, the calculation of the amount of restitution remaining is a two-step process. First, the court ascertains the full amount of the victim's loss . . . . The court then subtracts the amount paid by the other parties*. . . . What is left [if anything] is the unpaid portion of the victim's loss.").

The principle that the MVRA does not permit a windfall to victims is ubiquitous in federal case law.  For example, in *United States v. Huff*, 609 F.3d 1240, 1248 (11th Cir. 2010), the Eleventh Circuit noted that restitution under the MVRA "is not intended to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses."  The Huff Court also noted that to avoid a windfall, "*any value of the services or items received by the victim ... must be offset against the restitution order.*" *Id.* at 1248 (emphasis added).  The Court vacated the district court's restitution order because it had failed to "determine whether any value has been rendered to the victim in the form of a service or product that should be offset against the restitution amount."  *Id*. at 1249.  *See also United States v. Bane*, 720 F.3d 818, 827–28 (11th Cir. 2013) ("*failing to offset* the amounts paid for those goods from the restitution amount would be *inconsistent with the purpose of restitution because it would give a windfall to victims who received goods they actually needed in the form of both the goods and what they paid for them.* And Medicare, Medicaid, and supplemental insurers would get back funds they would have expended even absent Bane's fraud . . . . Because the victims who paid for medically necessary oxygen *paid no more than they would have if the tests had been performed by an independent entity, the only purpose behind restitution of those amounts would be to punish Bane, which is not a proper basis for a restitution award*") (emphasis added); *United States v. Swanson*, 483 F.3d 509, 515 (7th Cir. 2007) ("In *Swanson I,* we explained that, as part of its burden to prove a restitution amount, *the government must* deduct any value that a defendant's fraudulent scheme imparted to the victims.") (emphasis added); *United States v. Mullins*, 971 F.2d 1138, 1147 (4th Cir. 1992) ("Even if that amount were found to be the value of the property on either the date of loss or sentencing, the value of the portion of the property recovered by Workman *must be determined and deducted from that amount*."); (emphasis

added) *United States v. Geringer*, 672 F. App'x 651, 652–53 (9th Cir. 2016) ("A victim's loss should be offset by the victim's benefit for the purpose of calculating loss under the Sentencing Guidelines."); 18 U.S.C. § 3664(j)(2) ("Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in-- (A) any Federal civil proceeding; and (B) any State civil proceeding, to the extent provided by the law of the State.") .

As explained above, neither the County's original theory of restitution nor its Johnny-come-lately theory of restitution are legally or factually viable as to Mr. Wiseman. But even if they were (which they are not), the County has already received recompense for whatever damages it may have suffered, has been made completely whole, and it is not entitled to a windfall from Mr. Wiseman. Accordingly, this Court should deny the County's attempt to obtain a judicially sanctioned windfall and deny the County's entire claim for restitution from Mr. Wiseman.

## II. Because Mr. Wiseman Has Been Prejudiced by the Government's and the County's Failure to Comply with the Procedural Requirements of 18 U.S.C. § 3664, the County's Claim for Restitution Should Be Denied.

As noted above, Section (d)(1) of the MVRA requires the Government to provide notice of the amounts subject to restitution "not later than 60 days prior to the date initially set for sentencing." Presumably, the legal basis for the claimed restitution, if not otherwise self-evident, would be provided at the same time. The unstated purpose of this requirement is to provide a defendant with sufficient notice to respond to the claim and to provide any evidence of offsets which should be taken into consideration by the Court, to the extent that he is required to do so. *See Dolan v. United States*, 500 U.S. 605, 613(2010) (defendant has a Due Process "right not to be sentenced on the basis of invalid premises or inaccurate information.").

Here, the first notice that Mr. Wiseman received of the County's "loss of honest services" theory of restitution was on September 26, 2019, almost thirty days *after* Mr. Wiseman's sentencing hearing was held. Doc. 41. And the amounts allegedly due are wholly different from those claimed by the County in either its civil suit or in its submission to the Probation Officer.

To state the obvious, Mr. Wiseman received no advance notice of the County's current restitution theory or its methodology for calculating the amount of restitution it asks the Court to impose. Nor has he had any time, let alone a reasonable amount of time, to gather evidence to counter the County's current claim. Mr. Wiseman respectfully submits that this Court should not countenance sentencing by ambush any more than it would permit the Government to do so at trial. *Cf. United States v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997) (one of the purposes behind the requirement of notice embodied in Rule 404(b), Fed. R. Crim. Pro. is to prevent trial by ambush).

Having prepared to meet the County's inflated-contracts theory on the day of his sentencing, Mr. Wiseman objected to the Government's motion to delay the decision on restitution pursuant to 18 U.S.C. § 3664(d)(5). Mr. Wiseman did not object, on the date of sentencing, to the Government's failure to comply with the time limits imposed by Section 3664(d)(1) on the reasonable assumption that the Government was simply seeking additional time to ascertain the loss amounts attributable to the County's "inflated contracts" theory of restitution.

Mr. Wiseman had no notice at that time of the County's intent to create a new theory of restitution with wholly different loss amounts associated therewith. Mr. Wiseman was prejudicially surprised by the County's new theory of restitution and the new amounts of loss the

County now claims it suffered. Accordingly, Mr. Wiseman cannot be deemed to have waived his right to interpose an objection to the failure to comply with the statute's 60-day time limit.[27]

In its civil suit, the County alleged that the contracts between Mr. Wiseman, or more accurately Mr. Wiseman's company, EIC, and the County were inflated by as much as $1.9 million. But of course, no evidence to support those allegations has been provided in connection with that civil suit.

In the submission to the Probation Officer, the County declared, under penalty of perjury, that it was due restitution based on the value of the trips for which Mr. Wiseman paid for the County's corrupt employees and an additional sum based on the allegedly inflated contracts between EIC and the County totaling more than $500,000. Doc. 20, ¶ 24. But again, the County offered no evidence to support even this reduced sum. *Id*.

But on September 26, 2019, more than a year after filing its civil lawsuit, four months after its declaration under oath, and nearly a month after the sentencing hearing in this case, the County now claims for the first time that it has suffered damages due to the "loss of the honest and faithful services of Greene, Creighton, and Stone." This theory of restitution is vastly different from the "inflated-contract" theory previously asserted in both the civil lawsuit and its declaration to the Probation Officer.

---

[27] Mr. Wiseman now specifically objects to the Government's failure to provide notice of the "loss of honest services" theory of restitution and the current loss amounts claimed within 60 days of the date of sentencing, as required by Section 3664(d)(1), as well as the Government's failure to notify the Court of its intent to seek a delay in the restitution decision 10 days prior to the sentencing hearing as required by Section 3664(d)(5) in order to preserve his appellate rights on these issues. *See United States v. Cornette*, 932 F.3d 204, 209 (4th Cir. 2019) (appellate waiver does not bar appellate consideration imposed without statutory authority). *See also United States v. Broughton-Jones*, 71 F.3d 1143, 1147-49 (4th Cir. 1995) (challenge to restitution order imposed in violation of Victim Witness Protection Act was outside the scope of the appellate waiver).

And the amounts claimed are also completely new. The County currently seeks restitution of nearly twice the amount it declared under oath to be the true and correct sum of its losses just four months ago. *Compare* Doc. 20, ¶ 24 *with* Doc.41-1.

This sea change in the County's position at this stage of the proceedings violates both the spirit and the letter of the statutory mandate to provide the defendant notice of amount of restitution claimed at least sixty days prior to the sentencing hearing. 18 U.S.C. § 3664(d)(1). And, Mr. Wiseman has been substantially prejudiced by this change of horses after the river has been crossed.

First, Mr. Wiseman has expended substantial sums of money in an effort to meet the County's allegation that it was entitled to restitution based on the inflated contracts theory. Mr. Wiseman retained the services of two independent experts at no small cost who have completed repudiated the County's unsupported theory. Additional time and expense was incurred because counsel were required to search for, interview, and meet with the retained experts.

And then, in what appears to be a bait and switch on both Mr. Wiseman and the Court, the County has created a new theory of restitution and a methodology for calculating its purported loss that is unprecedented and unsupported from either a legal or evidentiary standard which they put forward in a seven-page memorandum. And, that memorandum inaccurately summarizes the facts, misstates the law it cites, ignores the relevant law from this jurisdiction, and provides the Court with nothing more than an essentially irrelevant affidavit setting out the salaries of Mr. Wiseman's co-defendants during a four year period without even considering whether that time frame comports with the life of the conspiracy to which Mr. Wiseman has pled guilty.

The Government, which is responsible for carrying the burden to prove restitution cannot escape responsibility for the prejudice to Mr. Wiseman. That burden has apparently been

satisfied with this simplistic submission to the Court: "The Government adopts the County's contentions and now respectfully submits the County's Memorandum as Attachment 1 to the instant pleading, and the affidavit in support as Attachment 2." No evidence, no legal analysis, and not even an acknowledgement that both the County's theory and methodology for calculating restitution are completely new.

The length of the instant pleading is further evidence of the prejudice that Mr. Wiseman has suffered financially as a result of the Government's and the County's conduct. If forcing Mr. Wiseman to incur additional and unnecessary legal expenses is intended to punish him for failing to reach a civil settlement with the County, this conduct is, at best, inappropriate.

If the County and the Government had advised the Court on the day of Mr. Wiseman's sentencing that additional time was needed to create a new theory of restitution because they could not support the original claim, made under oath, three months earlier, rather than what Mr. Wiseman, at least, assumed was a request for additional time to ascertain the amount of the County's losses under the inflated contracts theory, the Court would have undoubtedly recognized the likely prejudice to Mr. Wiseman. And, Mr. Wiseman would have had a more compelling basis to object to the Government's request to delay the restitution decision.

But Mr. Wiseman has been prejudiced by more than being forced to expend substantial sums of money to refute these shifting and unsupported restitution theories. Under this Court's local rules, Mr. Wiseman had only seven days, not sixty to meet the County's current claim. And, even with the Court's grant of an additional seven days to respond, Mr. Wiseman has barely had enough time to review, analyze and address the various cases included in the County's submission and to marshal the cases contrary to the County's asserted claim. But he

has had no time at all to seek and present evidence that might completely refute the County's claim that it suffered as a result of the dishonest services of its employees.

Based on a review of the letters submitted in support of Greene and Creighton, at least, it could be argued that despite their dishonesty, the County nevertheless received at least as much value, if not more, from the services of those corrupt employees as it would have received from a completely honest employee. *See e.g.* Case No. 1:18-cr-88, Doc. 67 (Creighton Sentencing Memorandum), pp. 15-22. As one citizen wrote,

> During the course of these projects I came to know and respect Jon for his leadership and relentless commitment to Buncombe County. From my perspective Jon always did what was in the best interest of Buncombe County; and *the citizens of our county continue to reap the benefits of his and his staff's commitment and efforts to move our county forward.*

*Id.* at p. 22.

One of Creighton's subordinates described Creighton's commitment to the citizenry of Buncombe County and his work ethic as follows:

> [W]e all worked together not just during the workday but also as he diligently sought to answer the questions of citizens, Commissioners, and others *no matter the hour or the day of the week.* His desire to provide folks with accurate and prompt responses was just one of things I admire about Jon's work ethic - *he served the people of Buncombe County well, whether it was wading through policy decisions, or doing what he could to help out a citizen with a simple or complex problem.* This desire drove Jon as an employee, and as a supervisor, and it defined the professionalism he expected of us as employees as well.

*Id.* at 24. Another subordinate described Creighton's work ethic this way:

> During my tenure here at the county I have always had respect and admiration for the work Jon provided to the citizens of the county. *Jon typically worked much longer hours than the typical employee and resolved several crisis situations a day.*

*Id.* at 25.

Similar evidence is contained in the letters submitted to the Court on Greene's behalf. She was described by two different Chairman of the Buncombe County Board of Commissioners as

the best County manager in the country. Case No. 1:18-cr-88, Doc. 74 (Greene Sentencing Memorandum), p.2. Her ex-husband recalled her tireless efforts on behalf of the County:

> I cannot even begin to recount the nights when she worked at home well into the wee hours of the morning, and most mornings she was up and gone to work well before daylight, returning long after the majority of her fellow employees had gone home.

*Id*. at ¶ 116. Additional evidence of the high quality of the services Greene provided to the County during her tenure as an employee and later as County Manager is found at pages of 11-22 of her Sentencing Memorandum.[28]

Even the County recognizes that Greene, Creighton and Stone provided valuable services despite their dishonesty. Thus, the County states that the proper measure of its damages is the difference between the value of what its corrupt employees provided and the value of what an entirely honest employee would have provided. *See* Doc. 41-1, p. 4, citing *United States v. Sapoznik*, 161 F.3d 1117, 1121 (7th Cir. 1998).

The County also acknowledges, however, the impossibility of determining the value of the honest services provided by its corrupt employee or the difference between the value of that service

---

[28] As undoubtedly clear to the Court, it is not Mr. Wiseman's intent to extol the virtues of either Greene or Creighton. Rather, it is Mr. Wiseman's purpose to demonstrate the County's patently flawed loss calculation. To make the point transparent, if the value of Greene's and Creighton's services to the County were 125% of what a typical, honest employee would have provided, even a 25% reduction in the value of Greene's and Creighton's' services due to their dishonesty would still leave the County with no loss. But the County asserts that it is Mr. Wiseman's burden to establish any offsets to its determination that the value of Greene's, Creighton's, and Stone's services should be reduced by an arbitrary percentage of 10% to 25% due to their dishonesty. *See* Doc. 41-1, p. 4, n. 1, citing *United States v. Bryant*, 655 F.3d 232, 254 (3rd Cir. 2011) (corrupt employee is in the best position to now the value of any legitimate services provided). Mr. Wiseman vigorously disputes that he has that burden, especially where he is not the corrupt employee and is not in a position to fully evaluate the value of the services provided on a daily basis by Greene, Creighton and Stone. *See e.g. United States v. Swanson*, 483 F.3d 509, 515 (7th Cir. 2007) ("[A]s part of its burden to prove a restitution amount, the government must deduct any value that a defendant's fraudulent scheme imparted to the victims. C*f. United States v. Karam*, 201 F.3d 320, 327 (4th Cir. 2000) ("defendant should know the value of any compensation *he has already provided* to the victim in civil proceedings, so the burden should fall on him to argue for a reduction in restitution order by that amount.").

and the service of an entirely honest employee. Doc. 41-1, p. 4. Therefore, the County asserts that a concededly arbitrary percentage of the total salary of its corrupt employees' salaries is good enough. And, if Mr. Wiseman desires a more accurate determination of restitution, he must carry the burden. *Id*. n. 1.

To support this unprecedented assertion, in the teeth of the plain language of Section 3664 which requires the Government in the first instance to prove the amount of restitution, the County mis-cites the case of *United States v. Bryant*, *supra*. That case does not hold that it is a defendant's burden to demonstrate the amount of restitution due in the first instance based on a lack of honest services.

Rather, the court held that the Government met its burden of proving restitution by offering evidence that the defendant had a "go slow" job "meaning he provided only minimal or nominal services." *Id*. at 237. *See also id*. at 243 (the trial evidence was sufficient for the jury to conclude that the defendant's entire salary was simply "provided in exchange for his abuse of his office."). Based on that evidence, the court found that it was the defendant's burden to establish the value of any legitimate services, if any, he may have provided as an offset to the amount of restitution calculated by the government because he was in the best position to know the value of any such legitimate services. *Id*. at 254.

But here, the County makes the unprecedented assertion that it is Mr. Wiseman's burden to demonstrate the value of the loss of the honest services attributable to Greene, Creighton, and Stone by proving the value of the honest services that those corrupt employees provided. Otherwise, the County says, the Court may simply use an arbitrary figure of 10% to 25% of the gross salaries of those employees over the life of the conspiracy.

But even if *Bryant* could be read to mean what the County's strained interpretation claims, that case represents a far different set of facts than the instant case. Mr. Wiseman was not an employee of the County. He did not work on a daily basis with any of his co-defendants. He is not, by training or experience, a Human Resource and Social Services Director, like Stone, a Planning Director and Assistant County Manager, like Creighton, or a County Manager like Greene. And, he is except for evidence already put before the Court by his co-defendants, unable in the short amount of time available to respond to the County's submission by gathering the evidence necessary to meet fully meet this burden.

To the extent that the Court agrees with the County's assertion that Mr. Wiseman must provide some evidence of the value of any offsets to the County's restitution claim, he adopts and tenders the Greene and Creighton Sentencing memoranda as evidence that they, in fact, performed legitimate, honest, and by all accounts, exemplary services when they were actually performing their duties on behalf of the County. And, to the extent that Mr. Wiseman is also required to place a value on the legitimate services that his co-defendants provided, Mr. Wiseman would, like the County, take the "reasonable and conservative" approach and value their legitimate services at 110% to 125% of their overall compensation.[29]

---

[29] If the Court is actually interested in determining the value of Greene's, Creighton's, and Stone's honest services and the true loss based on their dishonest services, the Government should subpoena each of the County Commissioners, employees, and contractors who worked with and for the County's corrupt employees during the four-year life of the conspiracy and we could spend several weeks taking testimony on the issue. But we submit that the MVRA provides a simpler remedy for cases like this where "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." The Court may simply to decline to impose restitution at all and leave the County to pursue its claim in the pending civil lawsuit. 18 U.S.C. 3663A(c)(3)(B). *See In Re Brown*, *supra*, 932 F.3d at 175. And, before the Court imposes any order of restitution in this case, Mr. Wiseman requests that the Court hold an evidentiary hearing and put the Government to its burden of proof and allow Mr. Wiseman the opportunity to challenge the evidence offered by the Government, if any, through cross-examination: "the greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970).

At bottom, given the arbitrariness of the County's current restitution claim, the difficulty that Mr. Wiseman would have in attempting to prove any offsets to that claim, the complexities of the issues involved, Mr. Wiseman would suffer severe prejudice if the Court were to impose an order of restitution despite the Government's failure to comply with the deadlines imposed on the Government and the County by the MVRA. And, we respectfully submit that the imposition of an order of restitution based on the County's current theory and methodology at this stage of the proceedings, especially in the absence of an evidentiary hearing, would not be harmless error. *Cf. Dolan v. United States*, *supra*, 560 U.S. at 616-617 (although strict adherence to the 90-day time limit for ascertaining a victim's losses after the sentencing hearing is not jurisdictional, where the delay results in prejudice to the defendant, "perhaps by depriving him of evidence to rebut the claimed restitution amount—the defendant remains free to ask the court to take that fact into account upon review. That inquiry might also consider the reason for the delay and the party responsible for its cause, *i.e.,* whether the Government or the victim."). *See also United States v. Zaic*, 744 F.3d 1040, 1044 (8th Cir. 2014) (failure to inform the court that "the victim's losses are not ascertainable by the date that is 10 days prior to sentencing" as required by Section 3664(d)(5) is harmless error in the absence of prejudice to the defendant); *United States v.Cienfuegos*, 462 F.3d 1160, 1162-63 (9th Cir. 2006) (failure to comply with 60-day time limit for submitting restitution claims as mandated by Section 3664(d)(1) is reviewed for harmless error); *United States v. Johnson*, 400 F.3d 187, 199 (4th Cir. 2005) (failure to comply with Section 3664's 10-day time limit was harmless error absent prejudice to defendant).

Both the Government and the County violated the procedural requirements of 18 U.S.C. § 3664. As a result, Mr. Wiseman has suffered demonstrable prejudice and the County's restitution claim should be denied on that basis alone.

**III.    The Factual and Legal Complexities of this Case Justify a Decision to Impose No Restitution Pursuant to 18 U.S.C. Section 3663A(c)(3)(B).**

As noted earlier, MVRA expressly provides that where the complexities of the case "related to the cause or amount of the victim's losses would complicate or prolong the sentencing process, to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process" no restitution need be ordered.  Here, there are a myriad of legal and factual issues that would require the Court's time and attention before Mr. Wiseman could be required to pay any amount of restitution to the County.

The length of this pleading demonstrates the legal minefield that the Court would need to traverse.  And, from a factual standpoint, Mr. Wiseman would insist on his right to an evidentiary hearing to explore, assuming the Government is actually prepared to put on some evidence to support the County's theory and methodology, the following factual questions, among others:

What is the proportionate value of the loss of honest services, if any, that Greene failed to provide based on the totality of her criminal conduct?  What is the County's estimate of the value of the lost services attributable to Greene's misuse of the County's credit cards, her orchestration of the insurance fraud scam, or her participation in the conspiracy with Ellen Frost?  Where are these losses factored into the County's current claim for restitution from Mr. Wiseman? Where is the reduction for the value of the reimbursements made by the County for trips paid for by Mr. Wiseman or the false claim by Greene for payments of unused annual leave?  And where is there *any* reduction for Greene's share of the loss associated with the relatively limited honest services fraud that she engaged in with Mr. Wiseman?  Similar questions would need to be answered with respect to Creighton and Stone.

And, perhaps, as the court in *Bryant* noted, only Greene, Creighton, and Stone are in a position to provide testimony as to the true value of the services they rendered, notwithstanding

their corruption. Attempting to elicit such testimony from any of those defendants raises new and equally complex legal issues.

In short, if Mr. Wiseman has not already definitively provided the Court with ample bases to deny the County's restitution claim, the Court is both empowered and would be amply justified in applying the complexities exception to the MVRA. Especially given the fact that, after more than a year, neither the Government nor the County has provided the Court with any evidentiary support for the current theory of restitution or the methodology for calculating the County's claimed loss.

## CONCLUSION

For each of the reasons stated herein, the County is not entitled to any restitution from Mr. Wiseman. And, even assuming, *arguendo,* that restitution in some amount is due in this case, the factual and legal complexities of trying to sort out the amount the County is due is a sufficient basis for this Court to refuse to prolong Mr. Wiseman's sentencing further. Accordingly, the Court should deny the County's claim.

Respectfully submitted, this 10th day of October 2019.

DABROWNLAW LLC
/s/david a. brown, sr.
David A. Brown, Sr.
NC Bar No. 48997
360 Rosemore Place
Rock Hill, SC 29732
Dabrownsr79@gmal.com
(704) 654-9418

PIERSON LAW, LLC
/s/ Holly A. Pierson
Holly A. Pierson
GA Bar No. 579655
3127 Maple Drive, NE
Atlanta, GA 30305

hpierson@piersonlawllc.com
(404) 353-2316

*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Sentencing Memorandum, with attachments, on this, the 10th day of October 2019, with the Clerk of Court by using the CM/ECF system, which will send notification of such filing to counsel for the United States.

/s/ David A. Brown
David A. Brown
N.C. Bar No. 48997